EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| EL Pueblo de Puerto Rico<br><br>    Peticionario<br><br>       v.<br><br>Osvaldo Ríos Alonso<br><br>    Recurrido | Certiorari<br><br>2002 TSPR 34<br><br>156 DPR \_\_\_\_ |

Número del Caso: CC-2000-1004

Fecha: 25/marzo/2002

Tribunal de Circuito de Apelaciones:
                        Circuito Regional VII

Juez Ponente:
                    Hon. José L. Miranda de Hostos

Oficina del Procurador General:
                    Lcda. Rose Mary Corchado Lorent
                    Procuradora General Auxiliar

Abogados de la Parte Recurrida:
                    Lcdo. Edgardo Luis Rivera Rivera
                    Lcda. María de Lourdes Guzmán

Materia: Art. 3.1, Ley 54

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

El Pueblo de Puerto Rico

    Peticionario

       v.                      CC-2000-1004      Certiorari

Osvaldo Ríos Alonso

    Recurrido

Opinión del Tribunal emitida por el Juez Asociado señor Hernández Denton

San Juan, Puerto Rico, a 25 de marzo de 2002.

En el presente recurso nos corresponde dilucidar si la norma sentada en Pueblo v. Arocho Soto, 137 D.P.R. 762 (1994), relativa al estándar de "clara necesidad" como requisito esencial para someter a una presunta víctima de violencia doméstica a un examen mental, resulta aplicable a casos donde la condición mental de la perjudicada que se pretende evaluar está relacionada a un elemento esencial del delito imputado. Por entender que, en tales casos, la referida norma es inaplicable, confirmamos.

**I**

El 10 de febrero de 1997 el señor Osvaldo Ríos Alonso (en adelante, el acusado) fue acusado de violar el Artículo 3.1 de la Ley Núm. 54 de 15 de agosto de 1989, 8 L.P.R.A. sec. 631, (en adelante, Ley de Violencia Doméstica) el cual tipifica el delito de "maltrato". Un mes más tarde, el 11 de marzo de 1997, la acusación fue enmendada. Luego de varios incidentes procesales, los cuales motivaron nuestra intervención en Pueblo v. Ríos Alonso, res. el 23 de noviembre de 1999, 99 TSPR 177, se celebró el juicio durante el mes de julio de 2000. Justo al inicio del mismo, el 10 de julio de 2000, el Ministerio Público nuevamente volvió a enmendar la acusación. En síntesis, la nueva acusación narraba los hechos imputados y precisaba que los mismos eran parte de un patrón de "maltrato físico y psicológico" del acusado hacia la presunta víctima.[1]

Celebrado el mencionado juicio, el jurado no llegó a un veredicto por lo que el tribunal de instancia señaló fecha para un nuevo juicio. Así las cosas, estando el caso señalado para

---

[1] Específicamente, la acusación establece:

> El referido acusado [...] ilegal, voluntaria, maliciosa, a sabiendas y con la intención criminal, empleó fuerza física y violencia contra la [presunta víctima], persona con quien cohabitaba y con quien había sostenido una relación consensual, ya que sin causa legal que lo justificara la agredió con las manos consistentes [sic] en que la empujó bien duro, la tira encima de la cama, le propina varios cabezazos y la muerde en la pierna derecha, ocasionándole varios hematomas y contusiones.

> Esta conducta es parte de un patrón de maltrato físico y psicológico del imputado hacia la perjudicada.

el segundo juicio, el 8 de agosto de 2000 el Ministerio Público anunció como prueba de cargo el testimonio de dos (2) peritos psicólogos que habían evaluado a la alegada víctima. A raíz de la nueva prueba anunciada la defensa solicitó realizar una evaluación psicológica de la alegada perjudicada por un perito de su selección para así estar en condiciones de impugnar la prueba pericial del Estado. En su solicitud ante el tribunal de instancia el acusado arguyó:[2]

> [La perito de la defensa] requiere para poder realizar su trabajo que este Tribunal permita examinar y evaluar a la [alegada víctima] para de esta manera estar en condiciones de realizar su trabajo y emitir su opinión en cuanto al contenido del informe que esencialmente narra el testimonio de la alegada víctima y las conclusiones a que llega [el perito del Ministerio Público].

> No existe fundamento ni razón alguna para que no se permita el examen psicológico de la alegada víctima[.] [M]ás aún, el delito imputado tiene como uno de sus elementos constitutivos la utilización de la alegada violencia psicológica lo que hace necesario e indispensable, por lo relevante, el que se permita dicho examen por la perito de la defensa a la alegada víctima[.]

Dicha solicitud fue declarada con lugar por el tribunal de instancia y confirmada por el foro apelativo. De este dictamen recurre ante nos el Procurador General y sostiene que procede revocar el dictamen del tribunal apelativo y denegar el examen mental solicitado. En síntesis, el Estado sostiene que, a tenor con la doctrina de Pueblo v. Arocho Soto, *supra*, procede exigírsele al acusado que demuestre una "clara necesidad" antes de permitir que se someta a la presunta víctima

---

[2] Véase, Moción Informativa y Solicitud de Orden del 5 de octubre de 2000, pág. 32 de los autos.

a una evaluación mental. Luego de expedir el auto solicitado y examinar las comparecencias de las partes, resolvemos.

## II

## A.

La Ley de Violencia Doméstica, *supra*, fue creada para proteger la vida, la seguridad y la dignidad de hombres y mujeres. A través de ésta se propicia el desarrollo, establecimiento y fortalecimiento de remedios eficaces para ofrecer protección y ayuda a las víctimas, alternativas para la rehabilitación de los ofensores y estrategias para la prevención de la violencia doméstica. Pueblo v. Rodríguez Velázquez, res. el 3 de octubre de 2000; 2000 TSPR 146. Con la aprobación de la referida ley se dio un paso fundamental para atender el serio problema que representa el maltrato físico, emocional y sexual dentro de una relación de pareja en nuestra sociedad.[3] De esta manera, en su Artículo 3.1, *supra*, la ley tipifica el delito de "maltrato", el cual sanciona la utilización de fuerza física, violencia psicológica, intimidación o persecución contra la persona con quien se sostiene o se ha sostenido una relación de pareja para causarle daño físico o emocional o daño a sus bienes.[4] Específicamente, el mismo dispone:

> Toda persona que empleare fuerza física o violencia psicológica, intimidación o persecución en la persona de su cónyuge, ex cónyuge, o la persona con

---

[3] Informe sobre el Discrimen por Razón de Género en los Tribunales de Puerto Rico, Comisión Judicial Especial para Investigar el Discrimen por Género en los Tribunales de Puerto Rico, agosto de 1995, pág. 331–332.
[4] *Id.* a la pág. 335.

quien cohabita o haya cohabitado, o la persona con quien sostuviere o haya sostenido una relación consensual, o la persona con quien haya procreado un hijo o hija, para causarle daño físico a su persona, a los bienes apreciados por ésta, excepto aquellos que pertenecen privativamente al ofensor, o a la persona de otro o para causarle grave daño emocional, será sancionada con pena de reclusión por un término fijo de doce (12) meses, excepto que de mediar circunstancias atenuantes se podrá reducir a un término no menor de nueve (9) meses y de mediar circunstancias agravantes podrá aumentarse hasta dieciocho (18) meses. (Énfasis suplido).

Como puede apreciarse, el delito de maltrato se configura cuando se den las siguientes circunstancias: (a) cuando una persona empleare fuerza física, violencia psicológica, intimidación o persecución; (b) en la persona de su cónyuge, ex cónyuge, o con quien cohabita o haya cohabitado, o con quien sostuviere o haya sostenido una relación consensual, o quien haya procreado un hijo; (c) para causarle daño físico (a su persona, a los bienes apreciados por ésta, excepto aquellos que pertenecen privativamente al ofensor, o a la persona de otro) o para causarle grave daño emocional.

Así, el referido delito contiene dos (2) modalidades de maltrato, a saber: (a) maltrato físico y (b) maltrato psicológico o emocional. El mismo ocurre tanto si se produce un "daño físico" como si ocurre un "grave daño emocional" y contempla no sólo el uso de fuerza física sino también el uso de "violencia psicológica". De esta manera, se le brinda una protección mayor a la víctima de violencia doméstica pues la propia ley tipifica como punible el "maltrato" en su acepción amplia. En este sentido, la Ley de Violencia Doméstica es una

de avanzada[5], en tanto reconoce que la violencia física no es el único medio de control utilizado en una relación de pareja y que la violencia psicológica puede producir efectos tan o más graves que aquella.[6] Precisamente, del historial legislativo de la mencionada ley se desprende que la violencia emocional o psicológica se conceptualizó como parte íntegra de la violencia doméstica; tipificándose tales actos como parte del delito de "maltrato".[7] Así, la Ley de Violencia Doméstica es reflejo de las más recientes corrientes que reconocen que el maltrato en una relación de pareja no solo se da en el contexto de la violencia física sino que abarca modalidades más complejas como ocurre en el maltrato psicológico o emocional.

Por ello, la propia ley establece unos parámetros claros para identificar lo que constituye maltrato psicológico. Así, en el Artículo 1.3 se precisa que "grave daño emocional" significa y surge: "cuando, como resultado de la violencia doméstica, haya evidencia de que la persona manifiesta en forma recurrente una o varias de las características siguientes: miedo paralizador, sentimientos de desamparo o desesperanza,

---

[5] <u>Pueblo v. Rodríguez Velázquez</u>, res. el 3 de octubre de 2000; 2000 TSPR 146

[6] <u>Informe sobre el Discrimen por Razón de Género en los Tribunales de Puerto Rico</u>, supra, a la pág. 335.

[7] Véase, Ponencia de la Organización Puertorriqueña de la Mujer Trabajadora en torno al Proyecto 470 del Senado y 615 de la Cámara de Representantes sobre Violencia Doméstica, págs. 6 y 7 (12 de junio de 1989) y; Ponencia de la Comisión para Asuntos de la Mujer ante la Comisión de lo Jurídico, la Comisión de Desarrollo Cultural y Seguridad Social y la Comisión Especial de la Mujer del Senado, Proyecto del Senado 470 sobre Violencia Doméstica, págs 7, 23-24 (1 de junio de 1989). Igualmente, véase Memorial Explicativo del Proyecto 470 del Senado y 615 de la Cámara, el cual recoge estas posturas.

sentimientos de frustración y fracaso, sentimientos de inseguridad, desvalidez, aislamiento, autoestima debilitada u otra conducta similar, cuando sea producto de actos u omisiones reiteradas".[8] Igualmente, dicho Artículo aclara que violencia psicológica "significa un patrón de conducta constante ejercitada en deshonra, descrédito o menosprecio al valor personal, limitación irrazonable al acceso y manejo de los bienes comunes, chantaje, vigilancia constante, aislamiento, privación de acceso a alimentación o descanso adecuado, amenazas de privar de la custodia de los hijos o hijas, o destrucción de objetos apreciados por la persona, excepto aquellos que pertenecen privativamente al ofensor".[9]

Ciertamente, la manera en que se configura el delito de "maltrato" dependerá de los hechos del caso. Así, el mismo no siempre requerirá la presencia de "fuerza física" o de "daño físico". Por el contrario, en algunas ocasiones el mismo se perfeccionará mediante el empleo de "fuerza física" para causarle a la alegada víctima "daño físico", mientras que en otras circunstancias bastará el empleo de "fuerza física" o "violencia psicológica" para causarle a la parte perjudicada "grave daño emocional".

Claro está, unos mismos hechos pueden producir tanto un daño físico como un grave daño emocional en la víctima y el Ministerio Público tiene discreción para imputar ambas modalidades en la acusación. Por ello, en estos casos (al igual

---

[8] 8 L.P.R.A. sec. 602.
[9] *Id.*

que en los demás casos criminales) la función de la "acusación" será crucial para el acusado pues, por virtud de ella, éste queda notificado de la naturaleza y extensión del delito imputado. De esta forma, el acusado adviene en conocimiento de los hechos que se le imputan; de suerte que prepare su defensa de conformidad. Así, el acusado de un delito de "maltrato" sabrá, por virtud de la acusación, si desarrolla su defensa a base de la ocurrencia de un daño físico o si procura prueba para demostrar la ausencia de violencia psicológica o grave daño emocional.[10]

A tenor con estos principios, surge la siguiente interrogante: ¿qué sucede cuando la acusación le imputa a un acusado haber incurrido en el delito de "maltrato" tras perpetuar actos que alegadamente son parte de un patrón de "maltrato psicológico" contra la víctima? ¿Tiene el acusado que demostrar una "clara necesidad", (como requisito esencial para someter a la parte perjudicada a un examen mental), cuando la condición mental de la perjudicada que se pretende evaluar está relacionada a un elemento esencial del delito imputado; esto es, la ausencia de "violencia psicológica" o "grave daño

---

[10] Tan importante es la acusación en nuestro ordenamiento que la propia Constitución establece el derecho del acusado "a ser notificado de la naturaleza y causa de la acusación recibiendo copia de la misma". Véase, Artículo II, sección 11 de la Constitución. Igualmente, su importancia se demuestra por virtud de la cláusula constitucional del debido proceso de ley, la cual exige que el acusado esté adecuadamente informado de la naturaleza y extensión del delito imputado. Pueblo v. González Olivencia, 116 D.P.R. 614, 617-618 (1985). De la misma forma, su centralidad queda fijada estatutariamente en la Regla 35(c) de las de Procedimiento Criminal, 34 L.P.R.A. Ap. II, R.

emocional"? De un examen de la literatura jurídica aplicable, hoy contestamos esta interrogante en la negativa.

## B.

En Pueblo v. Arocho Soto, *supra*, en el contexto de menores de edad, establecimos que de ordinario se requiere que un acusado demuestre una "clara necesidad" como requisito para someter a una presunta víctima a un examen mental. Ahora bien, el caso de autos plantea un asunto que no tuvimos oportunidad de atender en aquella ocasión; a saber, si el referido estándar es aplicable cuando la condición mental de la perjudicada que se pretende evaluar está relacionada a un elemento esencial del delito imputado. En vista que nunca antes habíamos dilucidado esta cuestión, estimamos prudente examinar aquellas discusiones que se han formulado en otras jurisdicciones sobre este particular. Veamos.

En State v. García, 613 P.2d 725 (N.M. App. 1980), el Tribunal de Apelaciones de Nuevo Méjico se enfrentó a una situación similar a la del presente caso y determinó que procedía la evaluación mental de la perjudicada ya que la misma iba dirigida a obtener información relacionada a un elemento esencial del delito imputado. En síntesis, la acusación presentada en dicho caso le imputaba al acusado haber incurrido en cierta conducta sexual criminal que causó "angustias mentales" en la víctima. Por ello, el Estado venía obligado a probar la existencia de "angustias mentales" como elemento

_____

35(c), al establecerse que la acusación contendrá "una exposición de los hechos esenciales constitutivos del delito".

esencial del delito. El tribunal de instancia denegó la evaluación psicológica solicitada por la defensa, razón por la cual el referido foro apelativo revocó. A tales efectos indicó:[11]

> El Estado arguye que el descubrimiento que pretende la defensa no debe ser autorizado a no ser que medien razones apremiantes. En los casos citados por el Estado en apoyo de su argumento el examen fue procurado bajo bases amplias[;] [esto es,] a base de la condición mental de la víctima y cómo esa condición afectaba su credibilidad. [Nuestra jurisprudencia] es consistente con un enfoque de "razones apremiantes" cuando el examen es procurado bajo la base general de la condición mental de la víctima y cómo esta afecta su credibilidad como testigo. El enfoque de "razones apremiantes" no es aplicable en este caso en vista que existe una base específica para el examen (descubrir información relacionada a las "angustias mentales" que el Estado debe probar), y dado que dicho examen está autorizado por la R. Proc. Crim. 29(b) [la cual autoriza el descubrimiento de cualquier asunto, no privilegiado, relevante a la ofensa imputada o a la defensa del acusado].
>
> Si el tribunal de instancia ejercitó su discreción al denegar la moción solicitando el examen, su denegatoria constituyó un abuso de discreción pues su efecto fue prohibirle al acusado el descubrimiento de información sobre un elemento esencial del delito imputado.

De la misma forma, en State v. Zeh, 509 N.E.2d 414 (Ohio 1987), el Tribunal Supremo de Ohio reconoció la importancia de permitir que el acusado realice una evaluación mental de la víctima cuando la condición mental de la perjudicada esté relacionada a un elemento esencial del delito imputado. En dicha ocasión el acusado fue encontrado culpable de un cargo de agresión sexual, el cual requería conocer que la capacidad de la víctima estaba sustancialmente afectada (en este caso, por

---

[11] State v. García, 613 P.2d 725, 728-729 (N.M. App. 1980).

virtud de su retardación mental).[12]  Al ordenarse un nuevo juicio, por haberse denegado la solicitud de evaluación presentada por la defensa para auscultar la capacidad mental de la víctima al momento de los hechos, el Tribunal señaló:[13]

> Se arguye que el acusado es tratado injustamente [esto es,] que aunque el Estado tiene el peso de probar la incapacidad [de la víctima] para controlar su propia conducta, la denegatoria de un examen clínico independiente [...] puso al acusado en una seria desventaja en la preparación de su defensa, teniendo que depender sólo de las evaluaciones clínicas utilizadas por el Ministerio Público.
>
> En este asunto estamos de acuerdo con la defensa[.] A nuestro juicio, solo hubiese sido justo permitirle al acusado procurar tal evidencia para su defensa o denegarle al Ministerio Público cualquier uso del testimonio del perito que se relacionara al elemento esencial del delito.

En State v. Rhone, 566 So.2d 1367 (Fla. App. 1990), el Tribunal de Distrito de Apelaciones de Florida validó la solicitud de la defensa para realizar una evaluación mental de la víctima por entender que la misma cumplía con el estándar de "razones apremiantes" en vista que iba dirigida a evaluar evidencia de un elemento esencial del delito imputado.  Así, dicho foro concluyó:[14]

> El tribunal de instancia concluyó que este caso es uno en el cual el acusado ha cumplido con esta pesada

---

[12] Específicamente, la disposición imputada establecía que:
"(A) No person shall engage in sexual conduct with another, not the spouse of the offender, when any of the following apply: […]
(2) The offender knows that the other person's ability to appraise the nature of or control his or her own conduct is substantially impaired." State v. Zeh, 509 N.E.2d 414, 417 (Ohio 1987).

[13] State v. Zeh, supra, a la pág. 418.
[14] State v. Rhone, 566 So.2d 1367, 1368-1369 (Fla. App. 1990).

carga [la de demostrar "razones apremiantes" para solicitar un examen psicológico] y no estimamos que dicho foro se haya apartado de los requisitos legales esenciales. En este caso el propósito de la evaluación es descubrir y evaluar evidencia de un elemento esencial del delito[.] [...]

Determinamos que el tribunal de instancia no se apartó de las exigencias legales esenciales[,] las cuales requieren un examen psicológico de la víctima cuando el Estado planea usar evidencia psicológica obtenida de su propio examen de un testigo para probar un elemento esencial del delito imputado y el cual no puede ser adecuadamente refutado sin un examen independiente de la víctima. Esto demuestra "razones apremiantes" para el examen.

A igual resultado llegó el Tribunal de Apelaciones de Nebraska en State v. Doremus, 514 N.W.2d 649 (Neb. App. 1994), al establecer que no empece requerirse "razones apremiantes" para someter a una víctima a un examen mental, procedía el referido examen ya que el mismo se refería a información relacionada a un elemento esencial del delito. A tales efectos el mencionado foro indicó:[15]

En resumen, en este caso el Estado introdujo el testimonio de sus propios peritos para demostrar que la víctima no estaba capacitada mentalmente para comprender una agresión sexual. Parte de los cargos que el acusado enfrenta se refieren a que éste sometió a la víctima a contacto sexual cuando sabía o debía saber que la víctima estaba incapacitada mentalmente para conocer la naturaleza de la conducta del acusado. [...] Concluimos que[,] cuando el examen solicitado conduzca a testimonio sobre un elemento esencial del delito imputado[,] existe una circunstancia apremiante que justifica una evaluación siquiátrica de la víctima por un perito de la defensa.[...]

Al tribunal de instancia denegar la moción de la defensa impidió que el acusado obtuviera la evidencia necesaria para refutar efectivamente el testimonio del perito de cargo, el cual fue usado para establecer un elemento esencial del delito. Encontramos que al

---

[15] State v. Doremus, 514 N.W.2d 649, 653-654 (Neb. App., 1994).

acusado se le privó de un derecho sustancial y concluimos que el tribunal de instancia abusó de su discreción al denegar la moción del acusado solicitando una evaluación independiente.

La importancia de valerse de una evaluación pericial hecha por la defensa fue destacada por el Tribunal Supremo de Illinois al señalar:[16]

> El Estado arguye que el perito del acusado podía formarse una opinión [...] revisando los informes preparados en el caso y observando el testimonio de la víctima y de los peritos de cargo en el juicio. [...] Este argumento ignora las diferencias cualitativas inherentes entre el testimonio de un perito que ha examinado a la víctima y aquel que no la ha examinado. [...]
>
> Un perito que ha examinado personalmente a una víctima está en mejor posición para emitir una opinión que aquel que no la ha examinado. [...]
>
> El testimonio psicológico es muchas veces controvertido y el valor de una opinión pericial depende en gran medida de la base de su opinión. [...] **En vista que en este caso el Estado ha tenido el derecho exclusivo para examinar a [la víctima], la credibilidad de sus peritos se ha elevado por encima de la de los peritos de la defensa, quienes no han examinado a la víctima.** Por ello, determinamos que es esencialmente injusto que el Estado pueda presentar testimonio de peritos que han examinado a la víctima mientras el acusado está limitado a utilizar el testimonio de un perito que no ha podido examinar a ésta. (Énfasis suplido).

Como puede apreciarse, de un examen de la doctrina pertinente se desprende que en casos como el que nos ocupa procede autorizar el examen mental solicitado. Estimamos que igual conclusión se exige en nuestra jurisdicción. Por ello, resolvemos que el estándar de "clara necesidad" resulta inaplicable a aquellos casos donde la condición mental de la

---

[16] <u>People v. Wheeler</u>, 602 N.E.2d 826, 832-833 (1992).

perjudicada que se pretende evaluar está relacionada a un elemento esencial del delito imputado.

A la luz de esta normativa, pasemos a discutir la situación que tenemos ante nos.

## III

Como hemos mencionado, la acusación que tenemos ante nos le imputa al acusado incurrir en una serie de actos como parte de un patrón de "maltrato físico y psicológico" hacia la presunta víctima. Evidentemente, el delito imputado está relacionado a la condición mental de la alegada perjudicada pues ya hemos dicho que el mismo se constituye tanto si se produce un "daño físico" como si ocurre un "grave daño emocional" y que contempla no sólo el uso de fuerza física sino también el uso de "violencia psicológica". Una vez el Estado imputa en la acusación que los actos en que alegadamente incurrió el acusado constituyen "maltrato psicológico" se demuestra que el Ministerio Público no sólo pretende probar la ocurrencia del delito de maltrato en su modalidad de daño físico sino también en su modalidad de daño emocional.

Mas aun, esto queda evidenciado no sólo por la propia acusación sino por virtud de las actuaciones del Estado ya que de las mismas se puede colegir que éste no limitará la prueba a la ocurrencia de un daño físico sino que interesa demostrar cómo los hechos imputados han constituido un "maltrato psicológico" que ha causado un daño emocional en la presunta víctima. Esto pues, ¿para qué anunciar prueba psicológica en este segundo juicio sino es para demostrar la existencia de un

"maltrato psicológico" y la ocurrencia de "violencia psicológica" y daño emocional en la víctima? Luego de un primer juicio, el imprevisto anunció del Ministerio Público para presentar prueba psicológica en esta etapa de los procedimientos, unido a la imputación de "maltrato psicológico" en la acusación, sólo demuestra una cosa; que el estado mental de la presunta víctima estará en controversia y que el mismo está relacionado a un elemento esencial del delito imputado. No podemos ignorar estos hechos y presumir que no se pretende enjuiciar al acusado por el delito de "maltrato" en su modalidad de daño emocional. Después de todo, los Tribunales no debemos ser tan ingenuos como para creer cosas que nadie más creería. Pueblo v. Luciano Arroyo, 83 D.P.R. 573, 582 (1961).

Como bien menciona la defensa, no debemos perder de perspectiva que el caso de autos trata sobre un segundo proceso en contra del acusado en donde el Ministerio Público anuncia por primera vez la inclusión de dos (2) peritos psicólogos como parte de su prueba de cargo. En otras palabras, se trata de la activación de la maquinaria judicial en contra de un acusado por segunda ocasión y en donde se anuncia por primera vez, justo antes del nuevo juicio, el uso de prueba psicológica pericial en su contra. En vista de esto, y a la luz de la acusación, ¿procede exigírsele al acusado que demuestre una "clara necesidad" para someter a la presunta víctima a una evaluación mental? Estimamos que no. Veamos.

El delito de "maltrato" sanciona el uso del "maltrato psicológico" que el Estado imputa y cuya prueba pretende.

Precisamente, el acusado ha intentado preparar su defensa a base de la referida acusación, entendiendo que la condición mental de la alegada víctima está en controversia y que la obtención de evidencia en torno a dicho estado mental será crucial para su defensa. Le asiste la razón. La evaluación mental solicitada resulta esencial para la defensa del acusado. Sin lugar a dudas, la referida evaluación va dirigida a auscultar evidencia relacionada a elementos del delito imputado; a saber, la existencia de un daño emocional y violencia psicológica. Además, tales elementos están relacionados a la condición mental de la presunta víctima. Ya hemos mencionado que, por virtud del propio artículo que configura el delito de "maltrato", el "grave daño emocional" surge cuando haya evidencia de que la víctima "manifiesta [...] miedo paralizador, sentimientos de desamparo o desesperanza, sentimientos de frustración y fracaso, [etc.]". No es difícil, pues, advertir que la evaluación mental solicitada va dirigida a obtener evidencia relacionada a elementos del delito imputado y que la misma será crucial para la defensa del acusado. De esta manera, cuando el Estado introduzca el testimonio de los peritos de cargo, (quienes sí han evaluado a la presunta víctima), para demostrar la existencia de violencia psicológica, intimidación o grave daño emocional, el acusado podrá controvertir el mismo mediante el oportuno cuestionamiento de sus testimonios. Ciertamente, una adecuada defensa requiere que a un acusado se le permita procurar evidencia en cuanto a los elementos

esenciales del delito imputado; los cuales en este caso están relacionados con el aspecto psicológico de la presunta víctima.

Como hemos mencionado, la importancia de indagar sobre estos aspectos queda evidenciada por el propio Ministerio Público, quien precisamente ha procurado la evidencia psicológica necesaria para probar el daño emocional y el maltrato psicológico imputado. Siendo esto así, ¿cómo es posible que el acusado se defienda adecuadamente si ni tan siquiera puede procurar un examen pericial de la alegada perjudicada para probar la inexistencia de daño emocional o psicológico? Mas aun, permitir que sólo el Ministerio Público examine a la presunta víctima (para obtener evidencia relacionada a un elemento esencial del delito imputado) perjudicaría grandemente al acusado en tanto elevaría desmedidamente el valor probatorio del testimonio de los peritos de cargo. Sin lugar a dudas, el valor probatorio del perito de la defensa, quien no habría podido evaluar a la alegada víctima, se vería disminuido frente a aquellos peritos de cargo que sí han podido recopilar testimonio relacionado a uno de los elementos esenciales del delito imputado mediante el examen directo de ésta. No podemos avalar esta situación. El asumir que un perito que no ha examinado a la víctima está en igual posición que aquel que la ha examinado ignora las diferencias inherentes entre los testimonios de ambos peritos.[17] Un perito que ha examinado personalmente a una víctima está en mejor posición para emitir una opinión que aquel que no la ha

examinado.[18] Además, éste puede asistir con mayor efectividad a la defensa en el contrainterrogatorio de los testigos de cargo.

Así, resulta inaceptable exigirle a un acusado que demuestre una "clara necesidad" cuando la condición mental de la presunta perjudicada que se pretende evaluar está relacionada a un elemento esencial del delito imputado; esto es, cuando en la propia acusación que tenemos ante nuestra consideración y de las actuaciones del Estado se demuestra que el proceso penal girara en torno al estado mental de la víctima. A nuestro juicio, una vez la acusación imputa ciertos elementos de un delito, el acusado tiene derecho a preparar su defensa conforme la misma. De lo contrario, poco uso tendría requerir la preparación de una acusación y su notificación al acusado. El Ministerio Público debe decidir, al acusar, cuáles elementos imputar; esto pues, el propósito de la acusación es notificarle al acusado de los elementos del delito imputado y de los hechos que van a estar en controversia.

Precisamente, a tenor con estos principios y consciente de su obligación, el foro de instancia optó por autorizar el examen solicitado. No abusó de su discreción al proceder de conformidad. Claro está, el que el tribunal de instancia tenga discreción para autorizar una evaluación por los peritos de la defensa no significa que dicho foro no pueda nombrar un perito del tribunal para realizar la misma. Así, ante situaciones de

---

[17] Véase, People v. Wheeler, *supra* a las págs. 832-833.
[18] *Id.*

este tipo, el referido foro tendrá discreción para determinar que el perito sea uno nombrado por el tribunal. Igualmente, de accederse a la solicitud del acusado para someter a la presunta perjudicada a una evaluación mental, el tribunal retiene autoridad para delimitar la misma, de suerte que se asegure que el examen no sea oneroso, opresivo o que entre innecesariamente en elementos de intimidad o privacidad que no sean pertinentes al caso.

En resumen, por entender que el estándar de "clara necesidad" no resulta aplicable en este caso, resolvemos que el foro de instancia no abusó de su discreción al autorizar la evaluación solicitada. En vista de lo anterior, se confirma el dictamen del foro apelativo. Se devuelve el caso al tribunal de primera instancia para que continúen los procedimientos conforme lo aquí resuelto.

Se dictará la Sentencia correspondiente.


Federico Hernández Denton
Juez Asociado

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

El Pueblo de Puerto Rico

    Peticionario

       v.                    CC–2000–1004      Certiorari

Osvaldo Ríos Alonso

    Recurrido

SENTENCIA

San Juan, Puerto Rico, a 25 de marzo de 2002.

      Por los fundamentos expuestos en la Opinión que antecede, la cual se hace formar parte íntegra de la presente, se confirma la sentencia del Tribunal de Circuito de Apelaciones y se devuelve el caso al Tribunal de Primera Instancia para la continuación de los procedimientos de forma compatible con lo aquí resuelto.

      Así lo pronunció y manda el Tribunal y certifica la Secretaria del Tribunal Supremo. El Juez Asociado señor Rebollo López emitió Opinión de Conformidad. El Juez Asociado señor Fuster Berlingeri emitió Opinión Disidente a la que se unen el Juez Presidente señor Andréu García y la Juez Asociada señora Naveira de Rodón, quien además emitió un Voto Particular Disidente.

Carmen E. Cruz Rivera
Secretaria del Tribunal Supremo Interina

EN EL TRIBUNAL SUPREMO DE PUERTO RICO


El Pueblo de Puerto Rico

    Peticionario

       vs.                          CC-2000-1004      CERTIORARI

Osvaldo Ríos Alonso

    Acusado-recurrido


**Opinión de Conformidad emitida por el Juez Asociado SEÑOR REBOLLO LÓPEZ**

**San Juan, Puerto Rico, a 25 de marzo de 2002**

Suscribimos la Opinión que en el presente caso emite la Mayoría de los integrantes del Tribunal. Ello no obstante, hemos entendido procedente expresarnos por separado en vista de algunos de los argumentos --los cuales entendemos totalmente erróneos y contradictorios-- esgrimidos en las dos Opiniones disidentes.

La facción disidente, no obstante reconocer el derecho de todo acusado a preparar adecuadamente su defensa y, a esos efectos, aceptar que el derecho que éste tiene al descubrimiento de prueba es consustancial al derecho a defenderse en un proceso criminal, curiosamente le niega a Osvaldo Ríos Alonso el

derecho a examinar psicológicamente a la presunta víctima, examen que resulta indispensable para preparar su defensa en vista de las alegaciones específicas en su contra de parte del Estado. Resolver lo contrario constituiría una clara violación al debido proceso de ley.

I

La Minoría aduce, como fundamentos principales para denegar el pedido del acusado, la "necesidad" de proteger el derecho de intimidad de la víctima y la ausencia de demostración, de parte del acusado, de "clara necesidad" para llevar a cabo el examen en controversia.

Con el propósito de justificar su erróneo curso decisorio, la Minoría especula que la razón o intención que tuvo, o debió tener, el ministerio público, al enmendar el pliego acusatorio para imputar que los actos del acusado formaban parte de un patrón de maltrato físico y psicológico hacia la alegada perjudicada, lo fue el hecho de que no contaban, en esos momentos, con el beneficio de la decisión que este Tribunal emitiera en Pueblo v. Figueroa Santana, res. el 23 de julio de 2001, 2001 TSPR 112.

Sea cual fuere la razón que tuvo el ministerio fiscal para llevar a cabo la enmienda, la realidad es que la hizo; hecho que establece las bases para que el acusado haga la solicitud de examen psicológico que hizo ya que la única conclusión lógica y razonable a hacerse de la acción del Estado es que éste cuenta con dicha prueba y que se propone, durante el juicio en su fondo, presentar la misma en evidencia[19]; prueba que el acusado tiene

---

[19] La conclusión contraria --esto es, de que el Estado, no obstante enmendar el pliego acusatorio para alegar un patrón de conducta de

el derecho de cuestionar y refutar, para lo cual tiene que, necesariamente, examinar a la presunta perjudicada.

Negarle ese derecho desembocaría en una clara y palpable violación al debido proceso de ley. Nos explicamos. Presentada la prueba a esos efectos por el Estado durante el juicio en su fondo --y no habiéndosele concedido, de antemano, al acusado la oportunidad de conocer la misma y de examinar a la presunta perjudicada-- éste estaría impedido de presentar prueba para refutar la del Estado. Ello no sólo situaría a Ríos Alonso en un estado de indefensión sino que el efecto, nocivo a éste, que ello tendría en la mente del juzgador de los hechos sería devastador.

La clara necesidad que tiene el acusado de conocer la prueba pericial con que, a esos efectos, cuenta el ministerio fiscal y la clara necesidad que tiene éste de examinar a la alegada perjudicada "salta a la vista y hiere la retina", In re: Roldán González, 113 D.P.R. 238, 242 (1982); razón por la cual el acusado no viene obligado a hacer demostración alguna de "necesidad" en el presente caso.

II

Por otro lado, e inmediatamente contradiciéndose, la Minoría nos informa que el acusado no queda huérfano de remedio pues, en todo caso, éste puede solicitar durante el juicio, al amparo de las disposiciones de la Regla 59 de Evidencia, que el tribunal designe un perito de su propia selección para que examine a la perjudicada.

---

violencia psicológica, de parte del demandado hacia la presunta víctima, no cuenta con dicha prueba y/o que no se propone presentar la misma en evidencia durante el proceso-- es tan ilógica que no merece discutirse.

Aparte del hecho de que dicha aseveración constituye una aceptación tácita de que el acusado --ante la presentación de dicha prueba durante el proceso por el ministerio público-- tiene derecho a examinar psicológicamente a la presunta perjudicada, cabe preguntarse: ¿qué diferencia hace, específicamente en cuanto al aspecto de la invasión de la intimidad de la perjudicada y lo traumático que para ella pueda resultar el examen psicológico a realizarse, que el referido examen lo lleve a cabo un perito seleccionado por el ministerio público, o por la defensa, o un perito designado por el tribunal?

## III

En fin, las dos razones principales aducidas por la Minoría en apoyo de su propuesto erróneo curso decisorio --esto es, "invasión a la intimidad" de la perjudicada y ausencia de "demostración de necesidad" de parte del acusado-- realmente carecen de validez y/o son inexistentes.

La decisión mayoritaria hoy emitida, resulta protectora de uno de los más preciados derechos que le garantiza la Constitución del Estado Libre Asociado de Puerto Rico a nuestros conciudadanos: el debido proceso de ley. Es por ello que la suscribimos.


FRANCISCO REBOLLO LÓPEZ
Juez Asociado

EN EL TRIBUNAL SUPREMO DE PUERTO RICO


El Pueblo de Puerto Rico

Peticionario

vs.                                    CC-2000-1004      Certiorari

Osvaldo Ríos Alonso

Recurrido


Opinión Disidente emitida por el Juez Asociado señor FUSTER BERLINGERI, a la cual se unen el Juez Presidente señor ANDREU GARCIA y la Jueza Asociada señora NAVEIRA DE RODON.

San Juan, Puerto Rico, a 25 de marzo de 2002.

En el caso de autos, una mayoría del Tribunal rehúsa extenderle a las víctimas de violencia doméstica la protección que este Foro muy justificadamente proveyó antes a las víctima de abuso sexual, en Pueblo v. Arocho Soto, 137 D.P.R. 764 (1994). A base de unas distinciones puramente formales, los Jueces de la mayoría autorizan aquí que a las mujeres que han sufrido ya un grave maltrato doméstico se les pueda someter **rutinariamente** a exámenes psicológicos intrusivos, hostigantes e intimidantes, cosa que hemos prohibido antes con respecto a las víctimas de abuso sexual. Así se crea la ominosa posibilidad de que las mujeres maltratadas no busquen el auxilio de los tribunales,           y           por           ende,

de que la Ley Contra la Violencia Doméstica se convierta en letra muerta.

Como no acepto que se le pueda negar a las víctimas de violencia doméstica la protección que cobija a las víctimas de abuso sexual, y como creo que la decisión de la mayoría aquí atrasa y menoscaba seriamente la lucha jurídica por conjurar uno de nuestros peores males sociales, que agobia a miles de mujeres del país todos los años, **disiento**. Veamos.

I

Conviene repasar todos los hechos pertinentes del caso, algunos de los cuales no están relatados en la opinión de la mayoría.

El 10 de febrero de 1997 Ministerio Público presentó una acusación contra el recurrido Osvaldo Ríos Alonso mediante la cual le imputó a éste una infracción al artículo 3.1 de la Ley Núm. 54 de 15 de agosto de 1989, 8 L.P.R.A. secs. 601-664, conocida como la Ley de Prevención e Intervención con la Violencia Doméstica (Ley de Violencia Doméstica). En dicha acusación se alegaron concretamente varios hechos de violencia física imputados al acusado. Específicamente, se alegó que éste: (1) había agredido con las manos a la perjudicada; (2) que le había propinado varios cabezazos; (3) que la había mordido; y (4) que todo ello le había causado varios hematomas y contusiones a ésta. **Días más tarde, el 11 de marzo de 1997, la acusación fue brevemente enmendada. Se añadió a la acusación solamente que la conducta imputada era "parte de un patrón de maltrato físico y psicológico del imputado hacia la perjudicada." No se alegaron hechos concretos adicionales**.

Luego de celebrarse el juicio, el jurado no llegó a un veredicto, por lo que el 21 de julio de 2000 dicho jurado fue disuelto. Se señaló un nuevo juicio para el 16 de agosto de 2000.

Surge de los documentos que obran en autos que en la vista celebrada el 16 de agosto de 2000 se suscitó una extensa discusión en corte abierta **en relación a la nueva prueba que el Ministerio Público había anunciado días antes** y el reclamo de la defensa de su derecho a descubrir todo lo pertinente sobre dicha nueva prueba de cargo. La discusión giró en parte en torno al uso anunciado por el Ministerio Público del testimonio pericial de las psicólogas Dra. Nydia Lucca y Dra. Ursula Colón. El foro de instancia suspendió el nuevo juicio y lo re-señaló para celebrarse el 23 de octubre de 2000. También autorizó a la defensa a contratar su propio perito para que, entre otras cosas, le asistiera en la preparación del contrainterrogatorio de los peritos anunciados por el Ministerio Público.

Así las cosas, días más tarde, el 25 de agosto de 2000, el recurrido presentó una moción al amparo de la Regla 95 de Procedimiento Criminal, 34 L.P.R.A. Ap. III R-95, mediante la cual solicitó inspeccionar o fotocopiar todo expediente médico o psicológico, informe pericial, y transcripciones o notas tanto de la Dra. Nydia Lucca como la Dra. Ursula Colón que fuesen producto de sus entrevistas con Daisy Santiago Rivera, la alegada perjudicada, y los de cualquier otra persona entrevistada. También solicitó acceso a cualquier grabación, fotografía, documento o protocolo utilizado con relación al diagnóstico y tratamiento de la perjudicada así como cualquier examen o prueba que le fuera suministrada a ésta y los resultados correspondientes, que fueran a ser utilizados por el Ministerio Público durante el juicio.

Mediante una moción fechada 8 de septiembre de 2000, **el Ministerio Público puso a disposición de la defensa el testimonio de la psicóloga Dra. Ursula Colón,** por entender que éste era de carácter acumulativo.

El 29 de septiembre de 2000 el recurrido presentó una moción solicitando una orden para que el Ministerio Público respondiera al descubrimiento de prueba pendiente. Señaló además, que una vez éste fuese contestado, deseaba que su propio perito realizara una evaluación psicológica a la alegada víctima, para estar en posición de impugnar el informe pericial y para poder contrainterrogar efectivamente a la doctora Nydia Lucca Irizarry, que había sido anunciada como testigo pericial por el Estado para el juicio en su fondo. Mediante otra moción de 6 de octubre de 2000, el recurrido solicitó nuevamente la evaluación psicológica de la alegada víctima. **Indicó en dicha moción concretamente que su perito necesitaba examinar a la víctima por espacio de diez (10) a quince (15) horas**. Solicitó además permiso para entrevistar a la hermana y a la madre de la víctima.

El 11 de octubre de 2000 el Ministerio Público replicó a las mociones del recurrido mencionadas antes. Alegó, *inter alia*, que el recurrido estaba dilatando los procedimientos con sus nuevos planteamientos; que desde 1998, como parte de un proceso civil paralelo a este caso, tenía conocimiento del testimonio de la perito Dra. Nydia Lucca, ya que en esa ocasión el abogado del recurrido había comparecido a una toma de deposición para deponer a la perjudicada y allí se le había entregado copia del informe de la Dra. Nydia Lucca, por lo que el recurrido había tenido mucho tiempo para preparar su defensa sobre este particular; que luego de cuatro años de haber sucedido los hechos, ahora la defensa pretendía someter a la perjudicada a una evaluación psicológica de diez a quince horas por un perito del recurrido, y someter además a los familiares de lo perjudicada (hermana y madre) a entrevistas también, todo lo cual constituía una pretensión opresiva e injusta.

Luego de otros trámites procesales, el 19 de octubre de 2000 el Tribunal de Primera Instancia celebró una vista para dilucidar las controversias aludidas que habían surgido con respecto al descubrimiento de prueba. Como resultado de dicha vista, el tribunal emitió una resolución y una orden el 27 de octubre de 2000; re-señaló el juicio para el 21 de noviembre de 2000; declaró con lugar la evaluación psicológica de la alegada perjudicada por un perito de la defensa; **y ordenó también un extenso descubrimiento de prueba a favor del recurrido. Concretamente, ordenó que se le entregara al acusado**:

> **Todo expediente médico o psicológico, informe pericial, transcripciones o notas de evaluaciones e impresiones de la Dra. Nydia Lucca, producto de sus entrevistas con la Srta. Daisy Annette Santiago (alegada perjudicada) y con cualquier otra persona entrevistada, para rendir su informe. Deberá suministrar además, copia de cualquier grabación ya sea de sonido o de video, fotografía, papel, expediente o documento utilizado para la evaluación de la Srta. Santiago o relacionado con el tratamiento y/o diagnóstico de la Srta. Santiago.**

> **Deberá proveer además, cualquier examen o prueba suministrada a la Srta. Daisy Santiago y sus contestaciones, tales como y sin limitarse a el protocolo de la prueba del Minnesota Multiphasic Personality Inventory – 2 hojas de respuesta de la prueba de Escala Wechsler de inteligencia, pruebas proyectivas administradas, hojas de contestaciones donde se anotaron las respuestas de las pruebas de oraciones incompletas, dibujos y hojas de contestaciones donde se anotaron las respuestas de las pruebas de Apercepción Temática, dibujos y/u hoja de contestaciones de la prueba Bender Gestalt y cualquier otra evidencia, documento, texto o libro utilizado como referencia o que se le haya suministrado, para llegar a sus conclusiones.**

El Ministerio Público presentó una moción de reconsideración y alegó la necesidad de proteger el derecho de intimidad de la víctima, y **que el recurrido no había justificado adecuadamente la necesidad del examen psicológico solicitado**. En la alternativa, adujo que de ser necesaria la evaluación referida, el tribunal debía **nombrar su propio**

**perito para llevarla a cabo y no utilizar uno nombrado por la defensa**. El foro de instancia denegó la reconsideración aludida.

Inconforme con el dictamen, el Procurador General acudió ante el Tribunal de Circuito de Apelaciones, mediante una petición de certiorari. Alegó que el foro de instancia había errado al ordenar que la víctima fuera evaluada psicológicamente por un perito contratado por la parte recurrida. Adujo que la orden referida constituía un abuso de discreción del foro de instancia debido a que dicha parte **no había justificado tal remedio de modo alguno**, y debido además a que constituía una **"desviación de las directrices emitidas por el Tribunal Supremo"** sobre los derechos de la víctima y sobre cuándo procede este tipo de evaluación.

El foro apelativo denegó el recurso solicitado por el Ministerio Público, mediante una Resolución emitida el 17 de noviembre de 2000. Determinó que al enmendar la acusación para alegar que la conducta imputada al recurrido era parte de un patrón de maltrato físico y psicológico de parte de éste hacia la perjudicada, el Ministerio Público había puesto en controversia "el aspecto psicológico de la perjudicada" y, por ende, el acusado tenía necesidad de realizar la evaluación referida para poder tener una defensa adecuada.

Inconforme con este dictamen, el Procurador General acudió oportunamente ante nos, y planteó en esencia lo mismo que había alegado previamente ante el foro apelativo.

El 1 de diciembre de 2000, expedimos el certiorari solicitado por el Ministerio Público. El 18 de enero de 2001, la parte recurrida sometió su alegato.

II

Reseñados los hechos esenciales del caso de autos, procedemos a exponer la normativa pertinente.

Nuestro sistema judicial criminal reconoce el derecho de todo acusado a preparar adecuadamente su defensa y a obtener, mediante el descubrimiento de prueba, la evidencia que pueda favorecerle. El derecho al descubrimiento de prueba es consustancial con el derecho de todo acusado a defenderse en un proceso criminal en su contra. Pueblo v. Arocho Soto, 137 D.P.R. 762, 766 (1994); Pueblo v. Echevarría Rodríguez, 128 D.P.R. 299, 324 (1991). Dicho derecho del acusado al descubrimiento de prueba tiene una fuente estatutaria en las Reglas de Procedimiento Criminal de Puerto Rico pero, además, en circunstancias propias, también procede, de modo más amplio, de la garantía constitucional sobre el debido proceso de ley. Pueblo v. Rodríguez Sánchez, 109 D.P.R. 243 (1979); Pueblo v. Hernández García, 102 D.P.R. 506, 511 (1974).

**Una instancia del descubrimiento de prueba que por razón del debido proceso de ley se le permite al acusado ir más allá de lo que autorizan las Reglas de Procedimiento Criminal, es precisamente la realización de exámenes o pruebas científicas como la que interesa el recurrido aquí.** Como se sabe, en nuestra jurisdicción un acusado de ordinario no puede entrevistar o interrogar a un testigo de cargo antes del juicio, como parte de su descubrimiento de prueba, a menos que el testigo acceda a ello. El imputado no tiene derecho a entrevistar o interrogar los testigos del Pueblo con anterioridad al juicio para preparar su defensa a menos que dichos testigos accedan voluntariamente a ello. Durante el juicio el imputado tiene tal derecho si el Ministerio Público ha anunciado antes tales testigos y luego decida no presentarlos. Pueblo v. Rodríguez Aponte, 116 D.P.R. 653, 660-661

(1985); Hoyos Gómez v. Tribunal Superior, 90 D.P.R. 201, 205-206 (1964). No obstante, hemos reconocido que en algunas ocasiones, por razón del debido proceso de ley, puede permitirse una evaluación psicológica como la que interesa el recurrido aquí aunque dicho descubrimiento de prueba rebase lo autorizado por las Reglas. Pueblo v. Arocho, supra, pág. 766.

Ahora bien, ya antes hemos hecho hincapié en que **"el descubrimiento de prueba que rebasa el texto de las Reglas y busca apoyo en el debido proceso de ley no es un recurso a invocarse livianamente. Está muy lejos de ser una patente de corso que en forma indiscriminada permita . . . o facilite al acusado cuanta evidencia pueda relacionarse con el caso criminal**." Pueblo v. Rodríguez Sánchez, supra, págs. 246-247. También hemos resuelto reiteradamente que el derecho del acusado al descubrimiento de prueba está limitado cuando incide sobre el derecho a la intimidad de la víctima o de otro testigo. En el contexto de las víctimas de abuso sexual, hemos reconocido que la tendencia en la mayor parte de las jurisdicciones estatales, igual que en la federal, **es a exigirle al acusado que demuestre una razón o necesidad clara cuando interesa una evaluación mental de la perjudicada, antes de que dicha evaluación sea ordenada**. Todo ello, para evitar lo intimidante y embarazoso que puede ser un examen psicológico, que puede aumentar el trauma emocional de la víctima. Otero v. Delbrey, 144 D.P.R 688 (1998).

El promovente debe ofrecer datos y razonamientos que le permitan al tribunal decidir si en efecto el examen mental solicitado debe ordenarse porque existe una clara necesidad para ello, lo suficientemente importante como para justificar una invasión al derecho a la intimidad de la víctima en cuestión. **La facultad de los**

**tribunales para ordenar tal examen mental debe ser ejercida con sumo cuidado**. Se trata de una facultad discrecional, que debe ejercerse sólo después de sopesar los efectos adversos que pueda tener la intromisión personal que representa dicho examen. Otero v. Delbrey, supra; Pueblo v. Rodríguez Sánchez, supra.

En efecto, con respecto a víctimas de abuso sexual, en Pueblo v. Arocho, 137 D.P.R. 762, 767 (1994), expresamente resolvimos que:

> [...]

> El derecho a la intimidad y a la integridad personal **vedan** el uso de exámenes o de pruebas científicas, como los que aquí interesa el acusado, excepto cuando éste demuestre **una clara necesidad para ello**. Poniendo en una balanza los intereses en conflicto, la necesidad de dicho examen **tiene que ser mayor que el perjuicio que se cause a la intimidad e integridad de la persona a ser evaluada contra su voluntad**. Así lo ha resuelto el Tribunal Supremo federal en el contexto de un proceso criminal. Winston v. Lee, 470 U.S. 753 (1985). (Énfasis suplido).

Aunque dicho caso involucraba a una menor de edad, por lo que el interés público en el asunto es aún mayor,[20] allí resolvimos claramente que la referida doctrina aplicaba **a cualquier víctima de abuso sexual, independientemente de su edad**.

Debemos reiterar que, como señalamos antes, la mayor parte de las jurisdicciones estatales y federales exigen que se demuestre una necesidad clara como condición para lograr una evaluación psicológica de la víctima. En una minoría de las jurisdicciones norteamericanas se ha permitido examinar psicológicamente a la víctima, sin que el acusado demostrara que existía una clara necesidad para llevar a cabo

---

[20] La referida norma la extendimos en Otero v. Delbrey, supra, a casos civiles. Este caso era uno sobre divorcio en el cual en la etapa de descubrimiento de prueba se intentó examinar psicológicamente a unos menores de edad por el perito del demandado. Allí resolvimos que por tratarse de menores de edad esto era **una consideración adicional** para proteger el derecho a la intimidad de las alegadas víctimas.

dicho examen, pero aun en éstas los casos pertinentes son claramente distinguibles del caso de autos. Así pues, en State v. García, 613 P.2d 725 (N.M. App. 1980), el Tribunal de Apelaciones de Nuevo Méjico permitió el examen psicológico de la perjudicada, como parte del derecho del acusado al descubrimiento de prueba al amparo de la Regla 29 (b) de Procedimiento Criminal de ese Estado. Resulta, sin embargo, que dicha regla, en comparación con nuestra Regla 95 de Procedimiento Criminal, 34 L.P.R.A. Ap. II R 95, es mucho más amplia y en efecto permite un descubrimiento de prueba más abarcador a favor del acusado que lo que nuestra Regla permite.

En State v. Zeh, 509 N.E.2d 414 (Ohio 1987), el acusado fue encontrado culpable por un delito de agresión sexual que requería como elemento constitutivo del delito que el agresor conociera que la víctima estaba mentalmente incapacitada. El Tribunal Supremo de Ohio sostuvo que cuando la condición mental de la víctima fuese un elemento esencial del delito imputado, la defensa podía solicitar la exclusión de evidencia obtenida de un examen psicológico previo por parte del perito del Estado, **a menos que la víctima voluntariamente aceptara ser evaluada por un perito independiente nombrado por el Tribunal**. En este caso el perito sería designado por el Tribunal, no por la defensa. Ello, a diferencia del caso ante nos en el cual se solicita que la evaluación psicológica sea efectuada por el perito del acusado.

En State v. Rhone, 566 So.2d 1367 (Fla. App. 1990), el Tribunal de Distrito de Apelaciones de Florida también permitió al acusado realizar una evaluación psicológica a la perjudicada, quien alegadamente padecía del "Battered Spouse Syndrome", lo que le impedía consentir al acto sexual. En vista de que la acusación dependía de la prueba del referido síndrome psicológico del que alegadamente

padecía la perjudicada, se le permitió al acusado examinar psicológicamente a la víctima para contrarrestar el esencial testimonio pericial del Estado.

En State v. Doremus, 514 N.W.2d 649 (Neb. App. 1994), se autorizó nuevamente el examen psicológico de la víctima por entender que, como parte de los elementos esenciales del delito, el acusado tenía que saber que la víctima estaba mentalmente incapacitada para consentir y por lo tanto conocer que se trataba de una agresión sexual.

En People v. Wheeler, 602 N.E. 2d 826 (1992), el Tribunal Supremo de Illinois condicionó que el Ministerio Público presentara testimonio pericial sobre el "Rape Trauma Syndrome" que alegadamente padecía la víctima, a que ésta consintiera a ser evaluada por el perito de la defensa. El testimonio pericial se utilizaría como prueba sustantiva por parte del Estado para probar que la perjudicada padecía de este síndrome y por lo tanto había sido violada. Por ello, era necesario que el acusado pudiera examinar psicológicamente a la víctima.

Como puede observarse, los hechos de todos los casos anteriores son muy particulares y claramente distintos a los del caso de autos. **En ninguno de ellos existía una víctima de violencia doméstica que el acusado deseaba examinar extensamente sin antes justificar en los méritos la necesidad de tal examen**. Dicho de otra forma, los casos referidos no representan realmente una excepción a la norma prevaleciente en la mayoría de las jurisdicciones estatales y federales norteamericanas en las cuales el examen psicológico de la perjudicada procede sólo cuando existe **una clara necesidad para ello**.

En resumen, pues, la solicitud de un acusado para que se obligue a una víctima de sus presuntos actos a que se someta a una evaluación psicológica, **que no está autorizado por las Reglas de Procedimiento**

**Criminal de Puerto Rico**, sólo puede concederse cuando el acusado ha demostrado previamente una clara necesidad para ello, que sobrepase el **riesgo de intimidación** y el perjuicio que tal evaluación le cause a la intimidad e integridad de la víctima a ser evaluada involuntariamente.

III

Procedamos ahora a determinar la aplicabilidad de la normativa reseñada antes a los hechos del caso de autos.

Es menester comenzar resaltando lo ocurrido en el caso de autos con respecto a la enmienda a la acusación. Según se indicó antes, en el acápite uno de esta opinión, inicialmente en la acusación del caso de autos sólo se imputaba el empleo de **fuerza física** contra la alegada víctima. No se aludía a un **patrón de maltrato físico** ni se alegaba **violencia psicológica**. Posteriormente se enmendó dicha acusación para imputar que la conducta de violencia alegada era parte de un **"patrón de maltrato físico y psicológico"** del imputado hacia la perjudicada.

La razón para esta enmienda es evidente y se entiende particularmente a la luz del problema que atendimos en Pueblo v. Figueroa Santana, res. el 23 de julio de 2001; 154 D.P.R. ___, 2001 TSPR 112, 2001 JTS 115. El problema surgió debido a que la Ley de Violencia Doméstica establece los distintos delitos de maltrato y agresión sin hacer referencia a un **patrón** de conducta de fuerza física o **de violencia psicológica**. Sin embargo, dicha Ley en su artículo 1.3 define tanto la violencia doméstica como la psicológica expresamente como un **patrón** de conducta. Esto evidentemente daba lugar a que una acusación que no imputase expresamente que existía un **"patrón de conducta"** pudiese ser impugnada por la insuficiencia de la acusación. Este problema existía antes de Pueblo v. Figueroa Santana, supra, en el que resolvimos que un **"patrón"** de conducta de violencia hacia la víctima no era un elemento

esencial del delito de maltrato tipificado en el artículo 3.1 de la referida Ley. Indicamos allí que era suficiente imputar una sola agresión a la víctima para que se configurara el delito de maltrato. Resolvimos asimismo que para probar el referido delito de maltrato basta con probar la agresión física. Sobre esto señalamos que:

> "Aunque generalmente los casos de maltrato por fuerza física implican también intimidación o violencia psicológica, esto no significa que para que se configure dicho delito sea necesario probar que la persona agraviada también fue víctima de violencia psicológica, intimidación y persecución."

Dicho caso fue resuelto posteriormente a los hechos del caso de autos. El Ministerio Público no tenía el beneficio de lo pautado en Pueblo v. Figueroa Santana, supra, cuando enmendó la acusación del caso de autos, por lo que resulta obvio que la enmienda a la acusación aquí sólo iba dirigida a tratar de cumplir formalmente con la definición que la Ley parecía establecer entonces para configurar el elemento de violencia doméstica. En otras palabras, la enmienda a la acusación en cuestión aquí no iba medularmente dirigida a establecer el abuso psicológico de la perjudicada como un hecho central de lo alegado en la acusación sino meramente a cumplir con lo que entonces se entendía que era un requisito esencial en la configuración del delito imputado, que supuestamente requería que se alegase en la acusación que había existido un **patrón** de maltrato físico y **psicológico**.

Entender lo anterior es claramente necesario para comprender a su vez la cuestión que aquí nos concierne. Como señaláramos antes, en el caso de autos el foro de instancia concedió la petición del acusado para realizar una evaluación psicológica de la víctima **<u>sin expresar las razones o justificación que tuvo para conceder tal petición</u>**. En su sentencia, el Tribunal de Circuito de Apelaciones intentó suplir lo que el Tribunal de Primera Instancia no hizo al considerar la solicitud del

recurrido sobre la evaluación psicológica de la perjudicada. El foro apelativo intentó **justificar por su cuenta la necesidad de la evaluación en cuestión**, y se amparó para ello **en el mero hecho de haberse enmendado la acusación**. Expresó que la enmienda referida "puso en controversia el aspecto psicológico de la perjudicada".

En su alegato ante nos, el acusado intentó abonar a lo determinado por el foro apelativo al indicar que: "... para que la perito de la defensa pueda estar adecuadamente preparada para realizar su función como tal, se hace necesario e indispensable que evalúe a la alegada perjudicada".

Las razones, antes referidas, del foro apelativo y del acusado sencillamente **no son suficientes por sí solas** para justificar aquí la evaluación mental involuntaria de la perjudicada por espacio de quince horas, según la ha solicitado el recurrido. Como se ha señalado antes, tal evaluación sólo procede cuando se ha demostrado que existe una necesidad clara para ello, de tal magnitud que justifique el riesgo de intimidación y la invasión al derecho de intimidad de la perjudicada. Aquí no se ha demostrado todavía que existe tal necesidad clara, con datos y razonamientos adecuados. **Sólo existen aseveraciones y alegaciones concluyentes**, que no son suficientes para satisfacer la exigencia jurídica de que exista una necesidad clara para el examen en cuestión.

Nótese en primer lugar, que la inclusión de la mera alegación en la acusación de que la conducta imputada era "parte de un patrón de maltrato físico y psicológico" no significa necesariamente que en efecto el Ministerio Público ha de dirigir sustancialmente el curso de su caso contra el acusado para probar que hubo violencia psicológica. En efecto, en el caso de autos el grueso de la acusación enmendada relata

hechos concretos de violencia física, **pero no hace referencia a ninguno de los daños específicos y particulares que se incluyen bajo la Ley de Violencia Doméstica en su definición de violencia psicológica**. Sólo se detallan los daños físicos. No se detallan daños mentales.

No hay manera de saber, sólo a base de dicha vaga y escueta alegación de violencia psicológica, si el procesamiento penal girará sustancialmente en torno a la condición mental de la alegada víctima. **Es precisamente por lo escueta y vaga que es la acusación referida en cuanto a maltrato psicológico que no surge de ella de ningún modo claro una justificación suficiente para la extensa evaluación mental de la presunta víctima que el acusado pretende realizar**.

La imputación aludida, que provocó la solicitud para la evaluación en cuestión, que sin detalle o hecho concreto alguno aduce que la perjudicada fue sometida a un patrón de maltrato psicológico, alude evidentemente a una **conducta del recurrido** que supuestamente ocurrió **en el pasado, hace ya varios años**, cuya prueba a quien **le corresponde es al Pueblo**. Por ello, la realización por la defensa **ahora** de una evaluación mental de la perjudicada presenta el riesgo de que ésta sea sometida antes del juicio a un examen muy íntimo sobre asuntos **que luego resulten ser tanto impertinentes como innecesarios**. Puede ocurrir que la intromisión psicológica con respecto a la perjudicada no sólo se extienda e indague más allá del efecto de la conducta pasada del recurrido, sino además, **que rebase la prueba que el Pueblo tenga o quiera usar en el juicio sobre ello**.

**Es incluso posible que una vez comenzado el juicio el Ministerio Público decida no pasar prueba sobre la violencia psicológica alegada en la enmienda a la acusación, ya que ahora es claro que ello no es un elemento necesario del delito imputado**. Como hemos resuelto ya, **no es**

**necesario ahora que el Estado pase prueba sobre la violencia psicológica**, debido a que el delito de maltrato se configura con sólo probar el uso de violencia física, independientemente de la alegación sobre dicha violencia psicológica. Pueblo v. Figueroa Santana, supra. Puede darse, pues, la injuriosa situación de que el acusado someta a la perjudicada a un examen mental hostigante y luego el Ministerio Público decida que no va a pasar prueba sobre la alegación de violencia psicológica. Es por ello, que la solicitud del acusado sobre la evaluación mental en cuestión en esta etapa de los procedimientos no sólo no está justificada, sino que, además, es claramente prematura.

Por otro lado, debe notarse también que en el caso de autos **el acusado tiene varios otros medios adecuados para obtener la información que alegadamente interesa**, que no requieren una severa intromisión personal con la perjudicada. En este caso el foro de instancia favoreció una petición del recurrido al amparo de la Regla 95(a)(3) de Procedimiento Criminal y ordenó que se le entregara a éste no sólo el informe pericial de la Dra. Nydia Lucca producto de su examen de la perjudicada, sino que, además, ordenó también que se le entregara al recurrido **todo el expediente que esa perito de cargo tuviese producto de sus entrevistas y examen de la perjudicada**. Ello incluye, por orden expresa del tribunal, que se le entregue al recurrido: **(1) las notas de evaluaciones e impresiones de la Dra. Nydia Lucca; (2) cualquier grabación de sonido o video; (3) los exámenes o pruebas que se le administraron a la perjudicada, junto con; (4) las hojas de respuestas o contestaciones a esos exámenes o pruebas, incluyendo dibujos, y (5) cualquier otra evidencia, documento o textos de referencia** que la perito de cargo haya utilizado para llegar a sus conclusiones. Es evidente que

esta **extraordinaria orden de descubrimiento de prueba le permitía a la perito del recurrido conocer lo mismo que conocía la perito de cargo**.

Por otro lado, durante el juicio la defensa del recurrido puede contrainterrogar a los peritos o testigos del Estado que declaren y, además, interrogar directamente a los testigos anunciados y no utilizados por el fiscal. Regla 43 de Evidencia, 32 L.P.R.A. Ap. IV R. 43. En este caso, el Ministerio Público puso a disposición de la defensa, por ser un testimonio acumulativo, el testimonio de la psicóloga Dra. Úrsula Colón, a quien los abogados defensores podrán interrogar. Asimismo, si el acusado demuestra que la presencia en sala de sus peritos durante el juicio resulta indispensable para la presentación de su defensa, el tribunal está obligado a permitirlo mientras testifiquen los peritos del Estado y la víctima. Regla 43(E)(2) de Evidencia, <u>supra</u>.

Finalmente, el acusado tiene también a su disposición el importante recurso dispuesto por la Regla 59 de Evidencia, 32 L.P.R.A. Ap. IV R. 59, **sobre el nombramiento de un perito por el tribunal**, la cual dispone, en lo pertinente que: "[a]ntes del comienzo del juicio o durante el transcurso de éste, cuando el tribunal determine que es necesaria prueba pericial, podrá de su propia iniciativa, o a solicitud de parte, nombrar uno o más peritos para que investiguen y sometan un informe según lo ordene el tribunal, o para que declaren en calidad pericial en el juicio". Con los peritos nombrados por el tribunal, "[s]e pretende superar la "parcialidad" del perito de parte, por medio de la presencia de peritos neutrales, no identificados con una parte". Chiesa, <u>Derecho Procesal Penal de Puerto Rico y Estados Unidos</u>, Vol. III, 1995, Forum, pág. 337.

Es claro de todo lo anterior, **que el recurrido tiene varios medios expeditos a su alcance para defenderse en cuanto al estado mental de**

**la víctima, frente a la prueba que pudiese presentar el Estado**. En el caso de autos, el recurrido **no ha demostrado concretamente que estos varios e importantes medios no son eficaces para el fin que alegadamente persigue**; es decir, no ha demostrado que a pesar de contar con todos estos medios, aun así necesita también poder contar con una medida tan intrusiva como la extensa evaluación mental de la perjudicada por su propio perito.

Debe quedar claro que nada de lo anterior significa que el acusado ha de quedar huérfano de una legítima defensa de resultar que, luego de que el Ministerio Público haya presentado la prueba de cargo, el aspecto medular del procesamiento penal en efecto gire en torno a la cuestión mental de la víctima. En tal caso, si luego de que la defensa haya utilizado los varios medios que tenía disponible para prepararse adecuadamente y contrarrestar la prueba del Pueblo, todavía resulta que el acusado interesa legítimamente el uso del testimonio pericial que requiere la evaluación psicológica de la víctima, entonces puede solicitar que ésta sea examinada por un **perito del Tribunal.** Una posición similar a ésta fue la que adoptó el Tribunal Supremo de Ohio en State v. Zeh, supra en la pág. 419, al señalar que:

> [...] when the mental condition of the victim-potential witness is a contested, essential element of the crime charged, the defense may move the court that the state be barred from utilizing evidence of such mental condition obtained in a clinical interview of the witness prior to trial **unless the witness voluntarily agrees to a court-appointed, independent examination, with the results being made available to both sides.** (Énfasis suplido).

Debe notarse que la mayoría del Tribunal en su opinión cita la decisión anterior en apoyo de su dictamen pero no toma en cuenta para nada lo resuelto por el Tribunal Supremo de Ohio en relación a la utilización en casos como el de autos de un perito del tribunal.

En resumen, pues, el tipo de evaluación intrusiva de la perjudicada que nos ocupa aquí no puede ser concedida automáticamente, sólo a base de alegaciones, sin un análisis adecuado, y en ausencia de datos y razonamientos específicos que le permitan al tribunal decidir que en efecto existe una clara necesidad para ello. **La mera alegación, escueta y concluyente, de un patrón de maltrato psicológico en la acusación, en esta etapa de los procedimientos no establece la necesidad de la extensa evaluación psicológica de la alegada víctima por el propio acusado que éste interesa llevar a cabo, sobre todo cuando ahora es claro que dicha alegación no es un elemento necesario del delito imputado, por lo que en el juicio pendiente el Ministerio Público puede incluso obviar pasar prueba sobre esta alegación**. Aunque el derecho al descubrimiento de prueba del acusado es consustancial con el derecho de todo acusado a defenderse en un proceso criminal en su contra, dicho derecho está particularmente limitado cuando incide sobre el derecho a la intimidad de la víctima. En Pueblo v. Arocho, supra, a la pág. 769, hicimos hincapié en que los acusados no tienen carta blanca para someter indiscriminadamente a las víctimas de abuso sexual a exámenes y pruebas científicas involuntarias. **Ello aplica también a las víctimas de violencia doméstica**. Como ya señaláramos antes, "la violencia doméstica es un mal endémico y una infamia repudiable que aqueja a la sociedad contemporánea". San Vicente v. Policía de P.R., 142 D.P.R. 1, 2 (1996). A ese mal no debemos añadirle la posibilidad de que se injurie a la perjudicada aún más con extensos exámenes psicológicos por el propio acusado que pueden ser intimidantes y violativos de su intimidad. **Ciertamente no debemos permitir que se procure tal examen como un medio de hostigar e intimidar a la perjudicada, mediante una evaluación de diez (10) a quince (15) horas**

**por su propio perito, como la que pretende el recurrido aquí**. Acceder indiscriminadamente a evaluaciones psicológicas como la que aquí se interesa, puede convertirse en un motivo más para que las víctimas de violencia doméstica desistan de sus querellas, lo que podría derrotar el propósito de la Ley de Violencia Doméstica. Por ello, el examen psicológico involuntario de la víctima en estos casos sólo debe permitirse cuando existan razones decisivas que claramente lo justifiquen. **En el caso de autos, no existen tales razones**. **El recurrido no demostró la clara necesidad y justificación para la evaluación en cuestión ante el foro de instancia; y la razón ofrecida para ello por el foro apelativo no pasa de ser vaga y concluyente.**

Para que no se malentienda nuestra posición, debe reiterarse que si el acusado logra establecer de antemano que la condición mental de la víctima ha de ser concretamente una cuestión medular en el caso penal en su contra, o si en efecto el Ministerio Público sigue adelante con sus peritos psicológicos e intenta probar que medió violencia mental, entonces el recurrido debe tener a su disposición obtener una evaluación psicológica **por un perito del tribunal**, antes de continuar con la prueba de defensa, si el foro de instancia estima que ello es necesario. Como hemos señalado ya, la propia Regla 59 de Evidencia permite el nombramiento de tal perito aun **"durante el transcurso del juicio."** Por ello, el acusado tiene aún esta opción, junto a los varios otros medios mencionados antes, para defenderse adecuadamente, si comenzado el juicio el Ministerio Público en efecto intenta probar que el acusado incurrió en violencia psicológica. Mediante el examen de la perjudicada por un perito del Tribunal, cuya imparcialidad sea incuestionable, se evita el riesgo real de que ésta pueda ser hostigada o sujeta a una injustificada intromisión psicológica a través de dicho examen, como

podría suceder si el examen lo realiza el perito contratado por el acusado. **El uso del perito del Tribunal asegura que el examen mental no será hostigante, y que será lo menos intrusivo posible**. Así se satisfacería puntillosamente el debido proceso de ley, a la vez que se protege la intimidad de la perjudicada al máximo posible. Una mayoría de este Tribunal, sin embargo, ni siquiera considera esta opción, excepto como una medida secundaria. Su celo por proteger al acusado a toda costa le hace perder de vista que los derechos de éste pueden protegerse adecuadamente, a la vez que se salvaguardan también los de la víctima. El decreto mayoritario carece del **balance** que la situación exige; atiende sólo los intereses del acusado cuando muy bien ello puede hacerse sin abrir la puerta a que la víctima sea objeto de otro atropello más. Con su aprobación indiscriminada del examen mental en cuestión en esta etapa de los procedimientos, la mayoría del Tribunal no demuestra gran sensibilidad por proteger a la mujer perjudicada, que es la víctima en casi la totalidad de los muchos casos de violencia doméstica que acontecen a diario en el país. Su dictamen unilateral a favor sólo del acusado no es de modo alguno cónsono con la clara posición que habíamos sostenido antes no sólo de combatir verticalmente el odioso discrimen contra la mujer, sino, además, de luchar contra esa endémica y repudiable infamia que es la violencia doméstica. Es por ello, y por todo lo anterior, que disiento.

JAIME B. FUSTER BERLINGERI
JUEZ ASOCIADO

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

El Pueblo de Puerto Rico

    Peticionario

        v.                         CC-2000-1004

Osvaldo Ríos Alonso

    Recurrido

Voto particular emitido por la Juez Asociada señora NAVEIRA DE RODÓN uniéndose a la Opinión disidente del Juez Asociado señor FUSTER BERLINGERI

San Juan, Puerto Rico, a 11 de marzo de 2002

Emitimos este voto particular para exponer brevemente los motivos adicionales que nos motivan a no suscribir el criterio mayoritario.

I

Al recurrido, Sr. Osvaldo Ríos Alonso, se le imputó haberle causado daño físico y/o emocional a la alegada víctima, tras incurrir en un patrón de maltrato físico y psicológico contra ésta, en violación al Art. 3.1 de la Ley de Prevención en Intervención contra la Violencia Doméstica, Ley Núm.

54 de 15 de agosto de 1989, 8 L.P.R.A. § 601 *et seq.* (en adelante Ley 54). Ante esta acusación, la defensa solicitó al tribunal de instancia que se le permitiese someter a la alegada víctima a un examen psicológico. El foro de instancia declaró con lugar esta solicitud. El Procurador General acudió en revisión de esta determinación ante el Tribunal de Circuito de Apelaciones, el cual confirmó al foro de instancia, señalando que el acusado tenía necesidad de esa evaluación para defenderse adecuadamente del delito imputado. La mayoría confirma este dictamen del Tribunal de Circuito señalando que dicha evaluación es indispensable para salvaguardar el debido procedimiento de ley del acusado.

No podemos suscribir este criterio. Nos parece que, como muy bien señala la Opinión disidente suscrita por el Juez Asociado señor Fuster Berlingeri, no se ha demostrado en este caso la clara necesidad y justificación para la evaluación sicológica de la perjudicada. No obstante, consideramos de vital importancia aclarar un factor adicional que nos mueve a disentir de la Opinión mayoritaria. Somos del criterio de que **la existencia de grave daño emocional no es un elemento del delito de maltrato mediante violencia psicológica, según tipificado en el Art. 3.1 de la Ley 54.**

Para entender claramente este planteamiento es necesario hacer un análisis breve, pero cuidadoso, de los Arts. 3.1 y 1.3(l) de la Ley 54. Veamos.

II

El Art. 3.1 de la Ley 54 dispone, en lo pertinente, lo siguiente:

Toda persona que empleare fuerza física o violencia psicológica intimidación o persecución en la persona de su cónyuge, ex cónyuge, o la persona con quien cohabita

o haya cohabitado, o la persona con quien sostuviere o haya sostenido una relación consensual, o la persona con quien haya procreado un hijo o hija, **para causarle daños físico**... **o para causarle grave daño emocional**... será sancionada con pena de reclusión.... 8 L.P.R.A. § 631 (Énfasis suplido)

Del texto de este artículo se desprende con meridiana claridad que existen dos (2) modalidades de maltrato, que constituyen la conducta punible bajo esta disposición legal. Estas son: que la persona acusada haya empleado o usado (1) fuerza física ó (2) violencia psicológica. A su vez, dicha fuerza física o violencia psicológica tiene que ser (a) dirigida hacia la alegada víctima, y (b) con el **propósito** de causarle a ésta daño físico o grave daño emocional.

El alcance de los elementos requeridos para que se configure el delito de maltrato mediante fuerza física los expusimos claramente en Pueblo v. Figueroa Santana, res. el 23 de julio de 2001; 154 D.P.R.\_\_\_\_\_(2001), 2001 T.S.P.R. 112, 2001 JTS 115. Por su parte, el Art. 1.3(l) define la violencia psicológica como:

> [U]n patrón de conducta constante ejercitada en deshonra, descrédito o menosprecio al valor personal, limitación irrazonable al acceso y manejo de los bienes comunes, chantaje, vigilancia constante, aislamiento, privación de acceso a alimentación o descanso adecuado, amenazas de privar de la custodia de los hijos o hijas, o destrucción de objetos preciados de la persona, excepto aquellos que pertenecen privativamente al ofensor. 8 L.P.R.A. § 602(l).

Un examen integrado de los Arts. 3.1 y 1.3(l) de la Ley 54 nos lleva a la conclusión de para que se configure el delito de maltrato mediante violencia psicológica **no** es necesario que el Ministerio Público pruebe, como elemento del delito, que la víctima ha sufrido efectivamente un grave daño emocional. Lo que hay que probar es que la persona acusada ha incurrido en cualquiera de las conductas que según el Art. 1.3 antes citado, es constitutiva de "violencia psicológica", y además que se pruebe que la persona que incurrió en esa conducta actuó

con la intención de causar grave daño emocional a la víctima, según lo dispone el Art. 3.1.

Así pues, el "grave daño emocional" es un **elemento de intención** del delito de maltrato mediante violencia psicológica. **Se refiere al estado mental de la persona acusada, no al estado mental de la víctima**. Siendo así, el Ministerio Público no tiene que establecer como un elemento de este delito que la víctima efectivamente sufrió "grave daño emocional". La razón es lógica y sencilla: no todas las personas víctimas de violencia doméstica reaccionan de la misma manera ante la conducta violenta de su compañero o compañera. Interpretar que para que se configure el delito de maltrato mediante violencia psicológica es necesario que se pruebe que la víctima efectivamente sufrió un daño emocional, o la extensión del mismo, es tanto como decidir que una persona que emocionalmente tenga más capacidad o fuerza para resistir el daño emocional o psicológico que pueda causarle la conducta de su compañero o compañera, está fuera del alcance de la protección que ofrece la Ley 54 contra este tipo de maltrato.

Esta conclusión choca de frente con los propósitos claros de esta Ley. Lo que castiga el Art. 3.1 es que la persona acusada haya incurrido en la conducta tipificada; **la comisión del delito no depende ni puede depender de la severidad del daño que efectivamente se logre causar a la víctima**.

No perdemos de vista de que la Ley define el término "grave daño emocional" desde la perspectiva de los sentimientos de "miedo paralizador, desamparo y desesperanza, inseguridad, desvalidez, aislamiento, autoestima debilitada u otra conducta similar..." experimentados por la víctima del delito. 8 L.P.R.A. § 602(c). Sin embargo, el que la ley defina el término "grave daño emocional" de esta

forma no significa que la prueba de dicho daño es elemento esencial del delito tipificado en el Art. 3.1. De hecho, la letra de dicha disposición es clara en cuanto que el "grave daño emocional" es un elemento de intención.

La definición de un concepto no equivale a establecer un elemento de un delito.[21] Sin embargo, tampoco estamos sosteniendo que la definición de grave daño emocional contenida en la Ley 54 no tiene ningún efecto práctico. Precisamente, los elementos contenidos en dicha definición sirven de guía para establecer si la conducta incurrida por la persona acusada de maltrato mediante violencia psicológica puede provocarle esa clase de sentimientos a la víctima. Pero es claro que nada en la Ley 54 sostiene la conclusión de que se requiere probar que la víctima efectivamente sufrió ese tipo de daño.[22]

Por lo tanto, un acusado no tiene en principio, un derecho absoluto bajo el debido procedimiento de ley a realizar una evaluación

---

[21] Idéntico razonamiento utilizamos recientemente en <u>Pueblo</u> v. <u>Figueroa Santana</u>, <u>supra</u>, donde señalamos lo siguiente:

> El hecho de que en la Ley se defina violencia doméstica como un patrón de conducta constante, no significa que el Art. 3.1 requiera que la fuerza física utilizada en un incidente particular sea parte de un patrón de conducta relacionado. No es lo mismo el **concepto** violencia doméstica, que es lo que define el Art. 1.3(k), que **fuerza física como elemento del delito de maltrato tipificado en el Art. 3.1 de la Ley 54**. La violencia doméstica, como concepto, se manifiesta generalmente en un patrón de conducta consistente en agresión, maltrato físico, verbal y psicológico. No significa esto que el legislador haya pretendido, en forma alguna, limitar la fuerza física que se requiere para cometer el delito de maltrato a que se pruebe el patrón de conducta constante que, como regla general, implica el concepto violencia doméstica.

[22] La existencia del grave daño emocional puede ser un elemento a considerar para otros fines, como por ejemplo, la posibilidad de que la persona convicta de violencia doméstica cualifique para un programa de desvío, en tanto y en cuanto la propia ley establece que al tomar esta determinación, "el tribunal tomará en consideración la opinión

psicológica de la víctima cuando se alega que el acusado ha incurrido en maltrato psicológico, o le ha causado a la víctima grave daño emocional. Para efectos de argumentación, esta información no es en nada relevante como defensa para el acusado, si lo que éste pretende establecer es que la alegada víctima no sufrió daño emocional alguno. Lo que tiene que establecer como defensa la persona acusada de maltrato mediante violencia psicológica es que no incurrió en la conducta constitutiva de violencia psicológica, o que no actuó con la intención de causar grave daño emocional.[23]

Ahora bien, si el Ministerio Público, aunque no viene obligado a hacerlo, decide ofrecer prueba pericial de que efectivamente la alegada víctima ha sufrido un grave daño emocional, el acusado tendría derecho a evaluar psicológicamente a la víctima, si demuestra la necesidad de dicho examen para defenderse adecuadamente.

## III

En este caso, el Ministerio Público decidió ofrecer prueba pericial sobre el daño psicológico y/o emocional sufrido por la alegada víctima. El acusado solicitó evaluarla entonces con su propio perito, pero entendemos que el acusado no sostuvo adecuadamente la necesidad de dicha prueba para su defensa. El hecho de que el Ministerio Público haya imputado en la acusación que efectivamente se le causó a la víctima un daño emocional no activa automáticamente un derecho bajo el debido

---

de la víctima sobre si se le debe conceder o no este beneficio." 8 L.P.R.A. § 636.

[23] Cabe señalar además, que la intención de causar grave daño emocional debe ser evaluada bajo un criterio objetivo, es decir, no basta la mera alegación de la persona acusada de que su intención no era causarle daño emocional a la víctima para que no se configure el delito de maltrato mediante violencia psicológica. Es necesario evaluar si, bajo las normas de conducta y criterios aceptados razonablemente por la sociedad, de la conducta de la persona acusada se puede o no desprender la intención de causar grave daño emocional.

procedimiento de ley a que el acusado realice una evaluación psicológica de la víctima. Como bien señala la Opinión disidente del Juez Fuster Berlingeri, la procedencia o no de dicha evaluación dependerá de la prueba que a esos efectos desfile el Ministerio Público. Al fin y al cabo, al no ser un elemento del delito, el Ministerio Público podría optar por no presentar prueba alguna de la existencia de grave daño emocional, por lo que coincidimos con el criterio de que ordenar *a piori* una evaluación psicológica de la víctima añadiría una pesada carga a los ya difíciles y sensibles casos de violencia doméstica.

Por todas estas razones, emitimos este voto particular disidente y suscribimos el criterio expuesto por el Juez Asociado señor Fuster Berlingeri en su disenso.


Miriam Naveira de Rodón
Juez Asociada