Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL IV

| EL PUEBLO DE PUERTO RICO<br><br>Apelado<br><br>v.<br><br>OTNIEL QUIÑONES DROSS<br><br>Apelante | TA2025AP00370 | *Apelación* procedente del Tribunal de Primera Instancia, Sala Superior de Fajardo<br><br>Caso Núm.: NSCR202500081<br><br>Sobre: Art. 3.1 Ley 54 (1989) Grave |
| --- | --- | --- |

Panel integrado por su presidenta, la Jueza Ortiz Flores, el Juez Bonilla Ortiz y la Jueza Martínez Cordero.

*Martínez Cordero, jueza ponente*

### SENTENCIA

En San Juan, Puerto Rico, a 18 de diciembre de 2025.

Comparece Otniel Quiñones Dross (señor Quiñones Dross o apelante) mediante un *Recurso de Apelación,* para solicitarnos la revisión del dictamen emitido el 10 de septiembre de 2025, notificado al día siguiente, por el Tribunal de Primera Instancia, Sala Superior de Fajardo.[1] Mediante el dictamen objeto de revisión, el foro de instancia le impuso la pena de un (1) año a tres (3) años de reclusión suspendida.

Por los fundamentos que expondremos, se *confirma* el dictamen apelado.

I

El presente caso inició con una *Denuncia* contra el señor Quiñones Dross,[2] por la alegada comisión de un delito al amparo del Artículo 3.1 de la Ley para la Prevención e Intervención con la Violencia Doméstica (Ley Núm. 54).[3] Celebrada la vista de

---

[1] Véase autos originales ante el Tribunal de Primera Instancia (TPI), a la pág. 90.
[2] *Íd.*, a la pág. 13.
[3] Ley Núm. 54 de 15 de agosto de 1989, 8 LPRA sec. 631. Este artículo tipifica el delito de maltrato.

determinación de causa probable para arresto, el foro primario encontró causa, por lo que el caso quedó señalado para vista preliminar.

Celebrada la vista preliminar, mediante *Resolución* emitida el 26 de diciembre de 2024, notificada al día siguiente, el tribunal *a quo* no encontró causa para arresto contra el señor Quiñones Dross.[4] Sin embargo, a solicitud del Ministerio Público, el caso fue referido para una vista preliminar en alzada.[5]

Luego de la correspondiente celebración de una vista preliminar en alzada, mediante *Resolución*, emitida el 18 de febrero de 2025, notificada el día 21, del mismo mes y año,[6] el tribunal de instancia encontró causa probable para acusación contra el señor Quiñones Dross por la comisión de un delito al amparo del Artículo 3.1 de la Ley Núm. 54.[7]

Así las cosas, el 19 de febrero de 2025, se radicó *Acusación* contra el apelante por el delito imputado.[8] Del referido documento se desprende lo siguiente:

> El referido acusado Otniel Quiñones Dross, desde el comienzo del matrimonio hasta el 16 de diciembre de 2024 y en Río Grande; Puerto Rico, que forma parte de la jurisdicción del Tribunal de Primera Instancia, Sala de Fajardo, ilegal, voluntaria y criminalmente empleó violencia psicológica en la persona de Vanessa Tosado Nuñez quien es su cónyuge, para causarle grave daño emocional. Consistente en que el aquí acusado[,] durante los años de matrimonio hasta el presente ha incurrido en violencia psicológica contra su cónyuge Vanessa Tosado Nuñez, gritándole palabras soeces e insultos tales como: puta, puerca, asquerosa; y manifestándole comentarios despectivos tales como: vividora, chapeadora. La minimiza como mujer expresándole que ella solo es teta, culo y peluca, que si no fuera por [é]l no fuera nadie, que ella es un parásito. Controla su manera de vestir y la hace sentir culpable de todo. Constituyendo esto un patrón de conducta recurrente en contra de la perjudicada, sintiéndose esta deprimida, ansiosa, con ataques de pánico y denigrada como mujer. Hecho contrario a la ley.[9]

---

[4] Véase autos originales ante el TPI, a la pág. 14 a.

[5] *Íd.*, a la pág. 14 b.

[6] *Íd.*, a las págs. 19 a-d.

[7] 8 LPRA sec. 631.

[8] Véase autos originales ante el TPI, a la pág. 20.

[9] En la *Acusación* radicada el 19 de febrero de 2025. Véase Autos originales del TPI, a la pág. 20.

Se desprende de los autos ante el foro de instancia que las partes realizaron el correspondiente descubrimiento de prueba. Posteriormente, el juicio en su fondo fue celebrado los días 23 de mayo, 4 de junio, 9 de junio y 14 de julio de 2025, por tribunal de derecho.[10]

Durante el juicio en su fondo el tribunal recibió como prueba testifical del Ministerio Público los testimonios de: (i) Vanessa Tosado Nuñez (señora Tosado Nuñez),[11] y (ii) el Agente Juan Navarro Amaro.[12] Por otro lado, como prueba testifical de la defensa, se recibieron los testimonios de: (i) Jilmarie Del Valle; (ii) Sandra Díaz Rodríguez, y (iii) José Quiñones Osorio.[13] En cuanto a la prueba documental, el foro primario, únicamente, admitió las identificaciones siguientes: Exhibit 1: Querella Policía (2 folios),[14] y Exhibit 2: Orden de Protección (5 folios), ambos presentados por el Ministerio Público.[15] Ahora bien, conviene mencionar que el referido foro aceptó como prueba ofrecida y no admitida un documento oficial de la Policía de Puerto Rico presentado por la defensa,[16] así como que se negó a admitir copia de unos mensajes de textos, presentada igualmente por la defensa, a los fines de impugnar a la señora Tosado Nuñez.[17] Conviene mencionar que, pese a que no se admitió el documento que contenía los mensajes de texto, el juzgador de instancia permitió hacer preguntas a la señora Tosado Núñez respecto a estos, puesto a que se le había refrescado la memoria acerca de los mensajes.[18]

Específicamente, el 14 de julio de 2025, concluido el desfile de prueba y evaluada la misma, el tribunal de instancia emitió su fallo

---

[10] Véase autos originales ante el TPI, a las págs. 56, 62 a-b, 63 y 68, respectivamente.
[11] *Íd.*, a las págs. 62 a-b.
[12] *Íd.*, a la pág. 68.
[13] *Íd.*
[14] Trascripción de la Prueba Oral (TPO), a la pág. 56, líneas 1-3.
[15] Véase los autos originales ante el TPI, a la pág. 63.
[16] *Íd.*
[17] *Íd.*, a la pág. 62 b. Véase, además, la TPO, a la pág. 158, líneas 48-51.
[18] TPO, a la pág. 159, líneas 1-4.

en corte abierta, en el cual declaró culpable al señor Quiñones Dross.[19] En lo atinente, refirió el caso para informe pre-sentencia y señaló vista para el 10 de septiembre de 2025.[20]

Luego de emitido el fallo, pero previo a ser emitido el dictamen aquí apelado,[21] el señor Quiñones Dross interpuso una *Moción solicitando reconsideración de fallo*, la cual fue declarada *No Ha Lugar.*[22]

Posteriormente, el 10 de septiembre de 2025, se celebró vista para dictar resolución.[23] Celebrada la misma, ese mismo 10 de septiembre, el foro de instancia emitió una *Resolución*, notificada al día siguiente,[24] mediante la cual dispuso que, habiendo determinado que concurrían en el caso los requisitos que imponía el Artículo 3.6 de la Ley Núm. 54,[25] y mediando el consentimiento del señor Quiñones Dross, le concedió los beneficios del régimen de libertad a prueba (desvío), sujeto a su participación en un programa de reeducación y readiestramiento para personas que incurren en conducta maltratante en la relación. A tenor, le impuso una pena de un (1) año a tres (3) años de reclusión suspendida y mantuvo en suspenso el pago de la pena especial por no recaer convicción. De igual forma, le impuso otras condiciones especiales. En esa misma fecha, se suscribió el Convenio para tratamiento programa de reeducación y readiestramiento,[26] exigido por el Artículo 3.6 de la Ley Núm. 54. [27]

Insatisfecho, el 23 de septiembre de 2025, compareció ante nos el apelante mediante un recurso de apelación en el cual esbozó la comisión de cinco (5) errores. Luego, el 6 de octubre de 2025,

---

[19] Véase los autos originales ante el TPI, a la pág. 68.
[20] *Íd.*
[21] *Íd.*, a las págs. 78 a-f.
[22] *Íd.*, a las págs. 79 a-b.
[23] *Íd.*, a las págs. 88 a-b.
[24] *Íd.*, a la pág. 90.
[25] 8 LPRA sec. 636.
[26] Véase los autos originales ante el TPI, a la pág. 89.
[27] 8 LPRA sec. 636.

compareció nuevamente mediante *Moción notificando entrega de la transcripción de la prueba oral.* Posteriormente, el 21 de octubre de 2025, la Oficina del Procurador General informó que estipulaba la misma. A tenor, mediante *Resolución* del 21 de octubre de 2025, acogimos la TPO como estipulada y concedimos los términos a las partes para que el caso quedara perfeccionado.

Así las cosas, el 19 de noviembre de 2025, el apelante presentó el *Alegato del apelante.* Distinto a lo que surge del recurso de apelación, en su pliego esbozó únicamente los siguientes (3) señalamientos de error:

1. ERRÓ EL HONORABLE TRIBUNAL DE PRIMERA INSTANCIA AL DECLARAR CULPABLE AL SR. OTNIEL QUIÑONES DROSS POR INFRACCIÓN AL ART[Í]CULO 3.1 DE LA LEY 54, AL NO DAR POR IMPUGNADA A LA TESTIGO-QUERELLANTE, A PESAR DE LA EXTENSA EVIDENCIA EN CONTRARIO, CUANDO LA PRUEBA DE CARGO NO ESTABLECIÓ SU CULPABILIDAD MÁS ALLÁ DE DUDA RAZONABLE EN VIOLACIÓN AL DERECHO A LA PRESUNCIÓN DE INOCENCIA Y AL DEBIDO PROCESO DE LEY.

2. ERRÓ EL HONORABLE TRIBUNAL DE PRIMERA INSTANCIA AL NO PERMITIR A LA DEFENSA CONFORME EL DEBIDO PROCESO DE LEY, PRESENTAR EN EVIDENCIA PRUEBA DE IMPUGNACIÓN -ENTIÉNDASE TEXTOS- BAJO LA PREMISA DE QUE DICHA EVIDENCIA NO LE FUE ENTREGADA AL MINISTERIO FISCAL DURANTE LA ETAPA DEL DESCUBRIMIENTO DE PRUEBA (REGLA 95 DE PROCEDIMIENTO CRIMINAL). DE ESTA MANERA, SE LE COART[Ó] AL HOY CONVICTO SU DERECHO A IMPUGNAR DE MANERA EFECTIVA A LA TESTIGO-QUERELLANTE.

3. ERR[Ó] EL HONORABLE TRIBUNAL DE PRIMERA INSTANCIA AL ADMITIR EN EVIDENCIA PRUEBA TESTIFICAL INADMISIBLE DE LA TESTIGO-QUERELLANTE -SOBRE SU ALEGADA AFECCIÓN EMOCIONAL Y F[Í]SICA COMO RESULTADO DEL SUPUESTO MALTRATO, A PESAR DE LA OBJECIÓN DE LA DEFENSA- Y SIN CONTAR CON PRUEBA PERICIAL Y/O DOCUMENTAL AL RESPECTO.

Mediante *Resolución* emitida el 16 de diciembre de 2025, concedimos al Procurador General hasta el 29 de diciembre de 2025, para presentar su alegato en oposición. No obstante lo anterior, conforme a la Regla 7(B)(5) del Reglamento del Tribunal de

Apelaciones,[28] este Tribunal tiene la facultad de prescindir de términos no jurisdiccionales, escritos, notificaciones o procedimientos específicos en cualquier caso ante su consideración, con el propósito de lograr su más justo y eficiente despacho". En consideración a lo anterior, eximimos a la parte apelada de presentar escrito en oposición al recurso. *In re Aprob. Enmdas. Reglamento TA*, 2025 TSPR 42, pág. 15, 215 DPR __ (2025).

II

## A. La Apelación en Casos Criminales

Sabido es que, en nuestra jurisdicción, toda persona acusada tiene derecho a apelar cualquier sentencia penal que recaiga en su contra.[29] Aunque el derecho a apelación no se encuentra en nuestra Carta de Derechos, nuestro Tribunal Supremo ha puntualizado que la apelación es un privilegio estatutario de carácter cuasi constitucional.[30] Por ello, los tribunales apelativos deben velar que, al convicto, no se le prive de sus derechos de manera arbitraria, irrazonable o discriminatoria, y que no se comentan violaciones a las garantías constitucionales del debido proceso de ley e igual protección de las leyes.[31] Ahora bien, para que surja el deber de esta Curia, de atender y resolver en los méritos un recurso de apelación criminal, este Tribunal debe adquirir jurisdicción y el apelante debe cumplir con los requisitos para su perfeccionamiento.[32] Cumplido lo anterior, estaremos facultados para considerar cualquier error de derecho cometido por el tribunal de instancia y para evaluar asuntos combinados de hecho y derecho.[33]

---

[28] 4 LPRA Ap. XXII-B, R.7 (B)(5).
[29] *Pueblo v. Torres Medina*, 211 DPR 950, 959 (2023).
[30] *Pueblo v. Rivera Ortiz*, 209 DPR 402, 419 (2022); *Pueblo v. Serbia* 78 DPR 788, 791–792 (1955).
[31] *Pueblo v. Rivera Ortiz*, supra, a las págs. 419-420; *Pueblo v. Esquilín Díaz*, 146 DPR 808, 816 (1998).
[32] *Pueblo v. Colón Canales*, 152 DPR 284, 291 (2000).
[33] *Pueblo v. Rivera Ortiz*, supra, a la pág. 422.

El trámite procesal de un recurso de apelación criminal, desde el Tribunal de Primera Instancia, pasando por este Tribunal intermedio, y hasta el Tribunal Supremo, se rige por las Reglas 193 a la 217 de Procedimiento Criminal.[34] Además, las Reglas 23 a la 30.1 del Reglamento de este Tribunal rigen el trámite a seguir desde la presentación del recurso de apelación criminal hasta su perfeccionamiento.[35] En lo pertinente, la Regla 23 (A) de nuestro Reglamento dispone que un escrito de apelación criminal contra una sentencia emitida por el tribunal de instancia tiene que ser presentado ante el Tribunal de Apelaciones, dentro del término jurisdiccional de treinta (30) días, computados a partir de la fecha en que se dictó la sentencia.[36] Como es sabido, un plazo jurisdiccional es de carácter fatal. Ello quiere decir que no admite justa causa, es improrrogable, y que su incumplimiento es insubsanable.[37]

En lo pertinente al caso de marras, es menester reseñar que nuestro Tribunal Supremo concluyó que "el hecho que marca el inicio del término jurisdiccional de treinta (30) días para acudir al Tribunal de Apelaciones no es el momento en el que el tribunal emite el fallo de culpabilidad, sino cuando se concede el beneficio de la libertad a prueba".[38] En otras palabras, para fines del derecho procesal apelativo, se debe entender que la concesión de libertad a prueba, bajo el programa de desvío del Artículo 3.6 de la Ley Núm. 54,[39] es el equivalente da la imposición de una sentencia final.[40]

Por otra parte, precisa resaltar que cuando se estime que para resolver una apelación es necesario que esta Curia considere alguna

---

[34] 34 LPRA Ap. II.
[35] Reglamento del Tribunal de Apelaciones, *In re Aprob. Enmdas. Reglamento TA*, 2025 TSPR 42, págs. 37-46, 215 DPR __ (2025).
[36] *Íd.*, a la pág. 37.
[37] *Ruiz Camilo v. Trafon Group, Inc.,* 200 DPR 254, 268-269 (2018); *Martínez, Inc. v. Abijoe Realty Corp.*, 151 DPR 1, 7 (2000).
[38] *Pueblo v. Torres Medina*, 211 DPR 950, 968 (2023).
[39] 8 LPRA sec. 636.
[40] *Pueblo v. Torres Medina,* supra, a la pág. 968.

porción de la prueba oral presentada ante el foro primario, la parte apelante deberá radicar una moción dentro de los diez (10) días siguientes a la radicación del recurso, en la cual acredite el método de reproducción de la prueba que ha de utilizar y los motivos por los cuales ese método es el más apropiado.[41] Con respecto a la reproducción de la prueba oral mediante transcripción, la Regla 29(A) dispone que se hará conforme a la Regla 76 del mismo reglamento.[42] Cabe destacar que, la Regla 76 (C) dispone de un término de treinta (30) días, contados a partir de la entrega de la regrabación, para que la parte apelante presente la transcripción de la prueba oral, salvo que esta Curia disponga otra cosa.[43]

### B. El Maltrato Emocional

La violencia doméstica se ha definido como "el maltrato físico y emocional que sufre una persona a manos de su cónyuge o ex-cónyuge, o a manos de una persona con quien sostiene o ha sostenido una relación íntima".[44] Esta conducta se ha catalogado como un comportamiento antisocial el cual produce graves problemas para las familias puertorriqueñas.[45] Esto, pues "es una de las manifestaciones más críticas de los efectos de la inequidad en las relaciones entre hombres y mujeres".[46] Además, se ha entendido que "la violencia doméstica atenta contra la integridad misma de la persona, de su familia y de los miembros de ésta y constituye una seria amenaza a la estabilidad y a la preservación de la convivencia civilizada de nuestro pueblo".[47] En consideración a lo anterior, se aprobó la Ley Núm. 54, a los fines de establecer un conjunto de

---

[41] *In re Aprob. Enmdas. Reglamento TA*, supra, a la pág. 45.
[42] *Íd.*
[43] *Íd.*, a la pág. 99.
[44] Exposición de Motivos de la Ley Núm. 54, *supra,* 8 LPRA sec. 601 nota *et seq.*
[45] *Íd.*
[46] Artículo 1.2 de la Ley Núm. 54, *supra*, 8 LPRA sec. 601.
[47] *Íd.*

medidas para prevenir y combatir la violencia doméstica, así como para tipificar ciertos delitos, entre estos el maltrato.[48]

Se ha entendido que "[u]na de las innovaciones más importantes de la Ley [Núm.] 54 fue criminalizar de manera específica el abuso psicológico en las relaciones íntimas, pues éste suele pasar desapercibido tanto porque no deja marcas visibles como porque muchas veces queda subsumido en otros tipos de violencia".[49] De otra parte, es menester acentuar que, mediante estudios, se ha demostrado que este tipo de maltrato ocasiona que las mujeres se sientan subordinadas e indefensas, por lo que luego tienden a soportar ataques físicos o sexuales.[50]

Específicamente, el Artículo 3.1 de la Ley Núm. 54 sanciona el maltrato en sus múltiples modalidades, entre estas, la violencia psicológica. Así, pues, según el referido artículo el maltrato se comete por:

> Toda persona que empleare fuerza física o violencia psicológica o económica, intimidación o persecución en la persona de su cónyuge, ex cónyuge, o la persona con quien cohabita o haya cohabitado, o la persona con quien sostuviere o haya sostenido una relación consensual, o la persona con quien haya procreado un hijo o hija, independientemente del sexo, estado civil, orientación sexual, identidad de género o estatus migratorio de cualquiera de las personas involucradas en la relación, para causarle daño físico a su persona, al animal de compañía o mascota de la víctima, de los hijos o del victimario, a los bienes apreciados por esta, excepto aquellos que pertenecen privativamente al ofensor, o a la persona de otro o para causarle grave daño emocional, incurrirá en delito grave de cuarto grado en su mitad superior. No será necesaria la prueba de un patrón de conducta para que se constituya el delito de maltrato.[51]

Entiéndase, entonces, que el delito de maltrato se configura cuando: (i) una persona empleare fuerza física, violencia psicológica, intimidación o persecución; (ii) en la persona de su cónyuge, ex cónyuge, o con quien cohabita o haya cohabitado, o con quien

---

[48] Propósitos de la de la Ley Núm. 54, *supra.*
[49] *Pueblo v. Ayala García*, 186 DPR 196, 208 (2012).
[50] *Íd.*
[51] Artículo 3.1 de la Ley Núm. 54, *supra.*

sostuviere o haya sostenido una relación consensual, o con quien haya procreado un hijo; (iii) para causarle daño físico (a su persona, a los bienes apreciados por ésta, excepto aquellos que pertenecen privativamente al ofensor, o a la persona de otro) o para causarle grave daño emocional.[52]

Establecido lo anterior, precisa señalar que la aludida ley define la violencia psicológica como:

> conducta ejercitada en deshonra, descrédito o menosprecio al valor personal, limitación irrazonable al acceso y manejo de los bienes comunes, chantaje, vigilancia, persecución, aislamiento, privación de acceso a alimentación o descanso adecuado, amenazas de privar de la custodia de los hijos o hijas, o destrucción de objetos apreciados por la persona, excepto aquellos que pertenecen privativamente al ofensor.[53]

Es decir, la violencia psicológica podría ocurrir "cuando se verbalizan insultos, burlas o críticas de manera repetida".[54] Por otro lado, la ley define el grave daño emocional como uno que surge cuando, a consecuencia de la violencia doméstica, la persona manifiesta de manera recurrente alguna de las siguientes conductas: "miedo paralizador, sentimientos de desamparo o desesperanza, sentimientos de frustración y fracaso, sentimientos de inseguridad, desvalidez, aislamiento, autoestima debilitada u otra conducta similar, cuando sea producto de actos u omisiones Reiteradas".[55] Dicho lo anterior, es de ver que, tanto para probar la violencia psicológica como para evidenciar el grave daño emocional, se requiere el elemento de recurrencia.[56]

Por último, destacamos que la forma en que se configure el delito de maltrato dependerá de los hechos del caso. De manera que, en algunas circunstancias habrá que probar que mediante violencia psicológica se le causa a la perjudicada grave daño emocional.[57]

---

[52] *Pueblo v. Ríos Alonso*, 156 DPR 428, 437 (2002).
[53] Artículo 1.3 (x) de la Ley Núm. 54, *supra*, 8 LPRA sec. 602.
[54] *Pueblo v. Ayala García*, supra, a la pág. 214.
[55] Artículo 1.3 (i) de la Ley Núm. 54, *supra.*
[56] *Pueblo v. Ayala García*, supra, a la pág. 214.
[57] *Pueblo v. Ríos Alonso*, supra, a la pág. 437.

Mientras que, en otras circunstancias, será necesario evidenciar que se empleó fuerza física para causar a la alegada víctima daño físico.[58]

### C. La Impugnación de Testigos

Sabido es que "[l]a impugnación de testigos es uno de los mecanismos más eficaces para el descubrimiento de la verdad, principio cardinal de nuestro sistema de justicia".[59] El objetivo central de la prueba de impugnación es menoscabar la credibilidad del testigo.[60] En otras palabras, "el propósito de la impugnación por contradicción es simplemente atacar instancias específicas del testimonio del declarante, demostrando que la declaración prestada es falsa, inexacta, poco probable o errónea".[61] Conviene mencionar que la evidencia de impugnación se divide en dos (2) clases: "la específica" y la "no específica".[62] La específica tiene como objetivo atacar el testimonio particular vertido por el testigo.[63] Mientras que, el propósito de la no específica es atacar al testigo en general, como podría ser la impugnación por parcialidad o interés.[64]

Sobre la prueba de impugnación, la Regla 608 (a) de Evidencia dispone que "[l]a credibilidad de una persona testigo puede impugnarse por cualquier parte, incluyendo a la que llama a dicha persona testigo a declarar".[65] Por otro lado, el inciso (b) de la aludida Regla expresa que "[l]a credibilidad de una persona testigo podrá impugnarse o sostenerse mediante cualquier prueba pertinente [. . .]".[66] Es harto conocido que, la evidencia pertinente es "es aquélla que tiende a hacer la existencia de un hecho, que tiene consecuencias para la adjudicación de la acción, más probable o

---

[58] *Pueblo v. Ríos Alonso*, supra, a la pág. 437.
[59] *Berríos Falcón v. Torres Merced*, 175 DPR 962, 975 (2009).
[60] *Berríos Falcón v. Torres Merced*, supra.
[61] *Íd.*, citando a *El Pueblo de Puerto Rico v. Raúl Galindo González*, 129 DPR 627, 643 (1991).
[62] *Pueblo v. Velázquez Colón*, 174 DPR 304, 337 (2008).
[63] *Íd.*
[64] *Íd.*
[65] 32 LPRA Ap. VI, R. 608.
[66] Regla 608 (b) de Evidencia, *supra*.

menos probable de lo que sería sin tal evidencia".[67] Asimismo, el referido inciso (b) desglosa un listado de los aspectos que se podrán utilizar para impugnar un testigo. Entre estos se encuentran:

> (1) Comportamiento de la persona testigo mientras declara y la forma en que lo hace.
> (2) Naturaleza o carácter del testimonio.
> (3) Grado de capacidad de la persona testigo para percibir, recordar o comunicar cualquier hecho sobre el cual declara.
> (4) Declaraciones anteriores de la persona testigo, sujeto a lo dispuesto en la Regla 611.
> (5) Existencia o inexistencia de cualquier prejuicio, interés u otro motivo de parcialidad por parte de la persona testigo, sujeto a lo dispuesto en la Regla 611.
> (6) Existencia o inexistencia, falsedad, ambigüedad o imprecisión de un hecho declarado por la persona testigo, sujeto a lo dispuesto en la Regla 403.
> (7) Carácter o conducta de la persona testigo en cuanto a veracidad o mendacidad, sujeto a lo dispuesto en las Reglas 609 y 610.[68]

Ahora bien, aunque, según adelantamos toda evidencia pertinente puede utilizarse a los fines de impugnar un testigo, es importante aclarar que este tipo de evidencia no puede utilizarse como subterfugio para traer evidencia que es inadmisible bajo otras disposiciones del ordenamiento probatorio.[69] Además, es menester señalar que el tribunal de instancia puede excluir evidencia pertinente cuando su valor probatorio queda sustancialmente superado por alguno de los factores siguientes: (a) Riesgo de causar perjuicio indebido; (b) Riesgo de causar confusión; (c) Riesgo de causar desorientación del jurado; (d) Dilación indebida de los procedimientos, y (e) Innecesaria presentación de prueba acumulativa.[70]

Establecido lo anterior, precisa destacar que entre los métodos más utilizados para impugnar se encuentran: (a) el interrogatorio; (b) la presentación de otro testigo cuyo testimonio contradiga lo testificado por el testigo que se pretende impugnar; (c) el conocimiento judicial, y (d) la presentación de evidencia material

---

[67] Regla 401 de Evidencia, 32 LPRA Ap. VI, R. 401.
[68] Regla 608 (b) de Evidencia, 32 LPRA Ap. VI, R. 608.
[69] *El Pueblo de Puerto Rico v. Raúl Galindo González,* supra, a la pág. 645.
[70] Regla 403 (b) de Evidencia, 32 LPRA Ap. VI, R. 403.

o documental.[71] Cabe destacar que, "[c]uando se pretende impugnar la credibilidad de un testigo, el Tribunal de Primera Instancia debe sopesar si la impugnación que se pretende llevar a cabo es a base de evidencia extrínseca colateral o no colateral".[72] Particularmente, la evidencia colateral "es aquella que no va directamente a la controversia litigiosa [. . .]".[73] Es decir, esta pretende atacar algo que no es pertinente para el caso.[74] De otra parte, la evidencia no colateral "es aquella que va dirigida a una de las controversias litigiosas del caso y se puede utilizar para impugnar la credibilidad de un testimonio, tanto con evidencia extrínseca testifical, material o documental".[75]

Por último, puntualizamos que hay instancias en la cuales la supresión de prueba de impugnación de un testigo esencial del Estado, si se considera que es evidencia pertinente respecto a la inocencia o culpabilidad del acusado, puede ameritar la concesión de un nuevo juicio.[76] No obstante lo anterior, se ha concluido que la supresión de este tipo de prueba conlleva la revocación de la condena y la celebración de un nuevo juicio "solo cuando su omisión constituya una lesión al derecho constitucional del acusado a que se le celebre un juicio justo, y cuando la supresión de dicha evidencia socave la confianza en el resultado del caso".[77] Entiéndase, que el juzgador debe evaluar "si la evidencia omitida puede cambiar la perspectiva del caso al punto de minar la confiabilidad del fallo condenatorio".[78]

---

[71] *Berríos Falcón v. Torres Merced*, supra, a las págs. 973-974.
[72] *Íd.,* a la pág. 974.
[73] *Íd.*
[74] *Íd.*
[75] *Berríos Falcón v. Torres Merced*, supra, a la pág. 974.
[76] *Pueblo v. Velázquez Colón*, supra, a la pág. 330.
[77] *Íd.,* a la págs. 331-332.
[78] *Íd.,* a la pág. 332.

### D. La Apreciación de la Prueba en Casos Criminales

Según se ha establecido jurisprudencialmente, "nuestro ordenamiento constitucional y estatutario respalda que todo acusado tiene el derecho de descansar en la garantía de la presunción de inocencia".[79] Así, pues, "[t]anto el derecho a no ser privado de la libertad sin un debido proceso de ley como la presunción de inocencia son axiomas constitucionales que exigen que la culpabilidad de un acusado se pruebe más allá de toda duda razonable".[80]

A la luz de lo anterior, para que el Estado logre "que una persona acusada sea encontrada culpable por la comisión de un delito, es necesario que el Ministerio Público presente prueba sobre cada uno de los elementos del mismo, así como de su conexión con el acusado y sobre la intención criminal de este último".[81] Nótese que, "la prueba es suficiente cuando versa en torno a todos los elementos del delito y su conexión con el acusado".[82] No obstante, "[l]a prueba así presentada, [. . .] no supone la necesidad u obligación de probar la comisión del delito con certeza matemática".[83] Siendo así, que "[l]o que se exige, como imperativo constitucional, es prueba satisfactoria y suficiente en derecho que produzca certeza o convicción moral en una conciencia exenta de preocupación o en un ánimo no prevenido".[84] Por su parte, el Tribunal Supremo, ha establecido que:

> [P]ara derrotar la presunción de inocencia y probar la comisión de un delito más allá de duda razonable, no se requiere que toda duda posible tenga que ser destruida, sino que se derrote la duda razonable, la que vendría siendo aquella duda fundada en el raciocinio de todos los elementos de juicio envueltos en el caso y que no constituye una duda especulativa o imaginaria.[85]

---

[79] *Pueblo v. Meléndez Monserrate*, 214 DPR 547, 559 (2024).
[80] *Íd.*
[81] *Pueblo v. Negrón Ramírez*, 213 DPR 895, 905 (2024).
[82] *Pueblo v. Meléndez Monserrate,* supra, a la pág. 560.
[83] *Pueblo v. Negrón Ramírez,* supra, a la pág. 907.
[84]*Íd.*, a la pág. 908, citando a *Pueblo v. Toro Martínez*, 200 DPR 834, 856 (2018). (Cita depurada).
[85] *Pueblo v. Negrón Ramírez,* supra, a la pág. 908.

Por otro lado, en cuanto a quien corresponde determinar si se cumple con el estándar de prueba, nuestro más Alto Foro ha reiterado que:

> Esta determinación, de si se satisfizo el estándar probatorio correspondiente, -- y, por ende, si se probó la culpabilidad del acusado más allá de duda razonable--, es una que **corresponde inicialmente al juzgador de hechos**, quien vendrá llamado a evaluar y aquilatar la evidencia presentada ante sí para determinar cuáles hechos han quedado probados o establecidos.[86]

A tenor con lo anteriormente expuesto, referente a la evaluación y suficiencia de prueba, la Regla 110 de Evidencia, dispone que:

> La juzgadora o el juzgador de hechos deberá evaluar la evidencia presentada con el propósito de determinar cuáles hechos han quedado establecidos o demostrados, con sujeción a los principios siguientes:
>
> [. . .].
>
> (C) Para establecer un hecho, no se exige aquel grado de prueba que, excluyendo posibilidad de error, produzca absoluta certeza.
>
> (D) La evidencia directa de una persona testigo que merezca entero crédito es prueba suficiente de cualquier hecho, salvo que otra cosa se disponga por ley.[87]
>
> [. . .].

Según anteriormente expuesto, con relación a las determinaciones de culpabilidad emitidas por foros inferiores, estas son revisables por tribunales de mayor jerarquía.[88] "Sin embargo, esta facultad no constituye una carta blanca para que los tribunales apelativos revoquemos, sin más, los fallos o veredictos emitidos por un tribunal de instancia".[89] Esto, a razones de que:

> [E]n nuestro ordenamiento jurídico impera una norma general de deferencia a la apreciación de la prueba y las determinaciones de hechos que realiza el foro juzgador, y solo reconoce contadas excepciones en las que un tribunal apelativo podrá intervenir con éstas y sustituir el criterio del foro primario por el suyo.[90]

---

[86] *Pueblo v. Negrón Ramírez*, supra, a la pág. 908. (Énfasis nuestro).
[87] 32 LPRA, Ap. VI, R. 110.
[88] *Pueblo v. Negrón Ramírez,* supra, a la pág. 909.
[89] *Íd.*
[90] *Íd.*

En vista de lo antes expuesto, el Tribunal Supremo ha expresado, referente a cuando se cuestiona la suficiencia de prueba presentada en un juicio, que el alcance de nuestra facultad revisora es limitado y requiere de deferencia a lo establecido por el foro primario.[91] Cónsono con lo anterior, se ha razonado que "[d]icha deferencia emana del hecho de que los juzgadores de instancia encuentran en una mejor posición para evaluar, aquilatar y adjudicar la prueba presentada ante ellos".[92]

Por otra parte, "la norma de deferencia está más que justificada cuando el planteamiento sobre la "insuficiencia de la prueba se reduce a uno de credibilidad de los testigos".[93] Lo anterior debido a que, "en cuanto a la credibilidad del testimonio prestado en el juicio, es principio inquebrantable que el foro sentenciador se encuentra en mejor posición para realizar dicha evaluación y adjudicación".[94] De manera que, "el tribunal sentenciador es "quien tiene la oportunidad de verlos y observar su manera de declarar, de poder apreciar sus gestos, titubeos, contradicciones, manerismos, dudas, vacilaciones y, por consiguiente, de ir formando gradualmente en su conciencia la convicción en cuanto a si dicen la verdad".[95] Por tal razón, "como regla general, un tribunal revisor está vedado de intervenir con la adjudicación de credibilidad de los testigos, ni puede sustituir las determinaciones de hechos que a su amparo haya efectuado el foro primario basado en sus propias apreciaciones".[96]

Finalmente, en las únicas circunstancias en las que procede la intervención de un foro revisor, para descartar la apreciación que realizó el juzgador sobre la credibilidad de los testigos, es si este

---

[91] *Pueblo v. Negrón Ramírez,* supra, a la pág. 910.
[92] *Íd.*
[93] *Pueblo v. Toro Martínez,* 200 DPR 834, 857 (2018), citando a *Pueblo v. De Jesús Mercado,* 188 DPR 467, 479 (2013). (Cita depurada).
[94] *Pueblo v. Toro Martínez,* supra, a la pág. 857.
[95] *Íd.*
[96] *Íd.,* a la pág. 858.

actuó movido por pasión, prejuicio, parcialidad o que incurrió en un error manifiesto en su adjudicación".[97]

### III

El apelante comparece ante esta Curia para que revoquemos el dictamen mediante el cual fue encontrado culpable por haber infringido el Artículo 3.1 de la Ley Núm. 54 y, a tenor, se le impuso una pena de reclusión suspendida. Mediante los tres (3) errores esbozados en el recurso de apelación, el apelante nos invita a concluir que fue un error por parte del foro de instancia el haberlo declarado culpable, razonando que dicho dictamen no fue establecido más allá de duda razonable. Por otro lado, nos convida a concluir que fue el tribunal apelado quien incidió al no permitir a la defensa presentar unos mensajes de texto como prueba de impugnación, coartando el derecho del apelante a impugnar de forma efectiva a una testigo; y que, de igual forma, el foro primario cometió el error de admitir prueba inadmisible sobre la alegada afección emocional y física, como resultado del alegado maltrato sin contar con prueba pericial y/o documental al respecto.

Luego de evaluar la totalidad de los autos ante nuestra consideración, incluyendo, además, la transcripción de la prueba oral, así como los autos originales del foro de instancia, hemos determinado que los errores esgrimidos deben ser discutidos por separado, por lo que así obraremos.

Conforme relatamos previamente, el caso del título inició cuando se presentó una *Denuncia* contra el señor Quiñones Dross por presuntamente haber infringido el Artículo 3.1 de la Ley Núm. 54,[98] el cual tipifica el delito de maltrato. Luego de varias instancias procesales, la cuales incluyeron, pero no se limitaron a una vista preliminar en alzada, se radicó la correspondiente acusación contra

---

[97] *Pueblo v. Toro Martínez,* supra, a la pág. 857.
[98] 8 LPRA sec. 631.

el apelante por el delito imputado. En suma, se le acusó de ilegal, voluntaria y criminalmente emplear violencia psicológica en contra de quien entonces era su cónyuge, la señora Tosado Núñez.

Tras cuatro (4) días de juicio, en los cuales se recibió tanto prueba testifical como documental de parte del Ministerio Público como de la defensa, en el último día de juicio, el tribunal *a quo* emitió su fallo en corte abierta, declarando culpable al aquí apelante.

Pasado un tiempo, se celebró una vista para dictar resolución en la cual se le concedió al señor Quiñones Dross los beneficios del régimen de libertad a prueba, sujeto a que participara de un programa de reeducación y readiestramiento para personas que incurren en conducta maltratante en la relación. Así, pues, según adelantamos, se le impuso una pena de un (1) año a tres (3) años de reclusión suspendida y se mantuvo en suspenso el pago de la pena especial, por no recaer convicción, así como que se le impusieron otras condiciones especiales.

En su *primer* señalamiento de error, el apelante plantea que el tribunal de instancia incidió al declararlo culpable, así como al no dar por impugnada a la señora Tosado Núñez, pese a que se presentó extensa prueba en contrario y a que no se estableció su culpabilidad más allá de duda razonable.

Conforme expusimos en nuestra previa exposición doctrinal, el Artículo 3.1 sanciona el maltrato en sus múltiples modalidades, entre estas la violencia psicológica.[99] Específicamente, el delito de violencia psicológica se configura cuando: (i) una persona empleare violencia psicológica, (ii) en la persona de su cónyuge, ex cónyuge, o con quien cohabita o haya cohabitado, o con quien sostuviere o haya sostenido una relación consensual, o con quien haya procreado un hijo; (iii) para causarle daño físico (a su persona, a los bienes

---

[99] 8 LPRA sec. 631.

apreciados por ésta, excepto aquellos que pertenecen privativamente al ofensor, o a la persona de otro) o para causarle **_grave daño emocional_**.[100]

Luego de evaluar minuciosamente la transcripción de la prueba oral, los autos originales del tribunal de instancia, incluyendo, además, la transcripción de la prueba oral, esta Curia concluye que mediante el testimonio de la señora Tosado Núñez, el cual nos abstendremos de resumir, en vista de que entendemos innecesario rememorar los actos de violencia psicológica perpetrados en contra de esta, fue capaz de probar más allá de duda razonable los elementos del delito imputado.

Según la Ley Núm. 54, la violencia psicológica es aquella "conducta ejercitada en deshonra, descrédito o menosprecio al valor personal [. . .]".[101] Igualmente, puede efectuarse mediante privación de acceso a alimentación o descanso adecuado,[102] así como a través de burlas y críticas de manera repetida.[103] En los cuatro (4) días de juicio la señora Tosado Núñez narró extensamente como su entonces cónyuge, el señor Quiñones Dross, incurrió en este tipo de conducta durante su matrimonio causándole grave daño emocional. En otras palabras, sentimientos de frustración, fracaso y una autoestima debilitada.[104] Todas conductas catalogadas por la Ley Núm. 54 como que surgen como consecuencia del daño emocional ocasionado por la violencia doméstica.[105]

Establecido lo anterior, concluimos que, de la prueba presentada en juicio, no se desprende nada que amerite que esta Curia intervenga con la labor realizada por el foro primario mediante el cual adjudicó credibilidad al testimonio de la señora Tosado

---

[100] *Pueblo v. Ríos Alonso*, supra, a la pág. 437. (Énfasis suplido).
[101] Artículo 1.3 (x) de la Ley Núm. 54, *supra.*
[102] *Íd.*
[103] *Pueblo v. Ayala García*, supra, a la pág. 214.
[104] Artículo 1.3 (i) de la Ley Núm. 54, *supra.*
[105] *Íd.*

Núñez. Es nuestra apreciación que los intentos de la defensa de impugnar el testimonio de la referida testigo, mediante unos mensajes de texto intercambiados entre esta y al aquí apelante, así como el testimonio de varios testigos, no merman la credibilidad del testimonio la señora Tosado Núñez sobre la violencia psicológica sufrida por esta a manos del señor Quiñones Dross.

Conforme expusimos en nuestra previa exposición doctrinal, como regla general, este Tribunal de Apelaciones está vedado de intervenir con la adjudicación de credibilidad los testigos, así como de sustituir las determinaciones de hecho que haya realizado el foro primario.[106] Lo anterior, puesto a que, siendo el tribunal de instancia quien está en mejor posición de evaluar y aquilatar la prueba presentada, dado a que tuvo oportunidad de observar la forma de declarar de los testigos, es decir, sus gestos, titubeos, contradicciones, manerismos, dudas, vacilaciones, este foro apelativo le debe deferencia a sus determinaciones.[107] Únicamente se justificará nuestra intervención cuando se desprenda con claridad que el foro primario actuó con pasión, prejuicio, parcialidad, o cuando incurre en error manifiesto. [108]

En consideración a lo anterior, y en vista de que, en este caso, no se encuentran presentes ninguna de las circunstancias que permiten que intervengamos para descartar la apreciación que realizó el juzgador de instancia sobre la prueba oral presentada en juicio, lo determinado en base a la valoración del testimonio de la señora Tosado Núñez debe sostenerse.

A pesar de que con lo anteriormente expresado es suficiente para confirmar el dictamen apelado, entendemos necesario discutir

---

[106] *Pueblo v. Toro Martínez,* supra, a la pág. 858.
[107] *Íd.,* a la pág. 857.
[108] *Íd.,* a la pág. 858.

la procedencia de los restantes dos (2) errores esgrimidos por el apelante. Veamos.

En su *segundo* señalamiento de error, el apelante arguye que el tribunal de instancia falló al no permitirle presentar unos mensajes de texto, presuntamente intercambiados entre él y la señora Tosado Núñez, como prueba de impugnación, dado a que los mismos no fueron entregados al Ministerio Público durante el Descubrimiento de Prueba.

Según adelantamos, la Regla 608 (b) de Evidencia dispone que "[l]a credibilidad de una persona testigo podrá impugnarse o sostenerse mediante cualquier prueba pertinente [. . .]".[109] De modo que, es cierto el planteamiento del aquí apelante en cuanto a que la prueba de impugnación no tiene que necesariamente entregarse durante el descubrimiento de prueba.

Sin embargo, conviene mencionar que el Ministerio Público, al presentarse la referida prueba de impugnación, objetó la identificación del documento puesto a que no fue descubierto en regla noventa y cinco (Regla 95).[110] No obstante, lo anterior, según se deprende de la transcripción de la prueba oral, la razón por la cual el juzgador de instancia no la admitió fue, más bien, dado a que la señora Tosado Núñez insistió en que los mensajes de texto estaban alterados.[111] En otras palabras, hubo un problema en la autenticación del documento. Por otro lado, sabido es que el tribunal de instancia tiene la facultad de destacar prueba admisible si su valor probatorio queda sustancialmente superado por alguno de los factures siguiente: (a) Riesgo de causar perjuicio indebido; (b) Riesgo de causar confusión; (c) Riesgo de causar desorientación del jurado; (d) Dilación indebida de los procedimientos, y (e) Innecesaria

---

[109] Regla 608 (b) de Evidencia, *supra.*
[110] Regla 95 de Procedimiento Criminal, 34 LPRA Ap. II, R. 95. Véase TPO, a la pág. 142, líneas 6-33.
[111] Véase TPO, a las págs. 142-158.

presentación de prueba acumulativa.[112] En consideración a lo anterior, colegimos que el tribunal *a quo* no incidió al declarar no ha lugar la admisión del documento que contenía los mensajes de texto intercambiados entre la señora Tosado Núñez y el señor Quiñones Dross. Más aún que, pese a que se declaró sin lugar la admisión del documento, el juzgador de instancia permitió que durante el contra interrogatorio efectuado por la defensa se le preguntara ampliamente a la señora Tosado Núñez sobre los referidos mensajes de texto, en vista de que se le había refrescado la memoria sobre estos.[113]

Ahora bien, a pesar de todo lo antes expuesto, en el caso de que entendiéramos que la prueba de impugnación, en efecto, fue suprimida erróneamente, es norma harta conocida que la supresión de este tipo de prueba solo conllevara la revocación de la condena en aquellos casos que la evidencia omitida cambie la perspectiva del caso "al punto de minar la confiabilidad del fallo condenatorio".[114] Cosa que, a nuestro juicio, en este caso no ocurrió.

Finalmente, en su *tercer* y último señalamiento de error, el apelante aduce que el foro primario erró al admitir prueba de la alegada afección física y emocional de la señora Tosado Núñez como resultado del supuesto maltrato, sin contar con prueba pericial o documental al respecto.

Sobre este particular, conviene mencionar que la Regla 110 (D) de Evidencia es clara en que "[l]a evidencia directa de una persona testigo que merezca entero crédito es prueba suficiente de cualquier hecho [. . .]".[115] Por otra parte, según acentuamos, nuestro Tribunal Supremo ha sido enfático que, para probar un delito más allá de duda razonable, no es necesaria la certeza

---

[112] Regla 403 (b) de Evidencia, *supra.*
[113] Véase TPO, a la pág. 159, líneas 1-4.
[114] *Pueblo v. Velázquez Colón*, supra, a la pág. 332.
[115] Regla 110 de Evidencia, *supra.*

matemática, o que toda duda posible sea destruida.[116] Lo único que se requiere es que se establezca, mediante la prueba, una convicción moral en una conciencia exenta de preocupación o en un ánimo no prevenido.[117] A esos efectos, juzgamos que, pese a que no se presentó el testimonio de ningún perito ni prueba documental, respecto a las aflicciones físicas y emocionales sufridas por la señora Tosado Núñez, su testimonio fue suficiente para establecer, más allá de duda razonable, el daño emocional ocasionado a esta por razón de la violencia psicológica perpetrada por el aquí apelante. Por otro lado, según ya enfatizamos, a menos que se desprenda claramente que incidió en su valoración de la prueba, este foro apelativo está vedado de variar la adjudicación de credibilidad de los testigos.[118] Ello, puesto a que, conforme explicamos, es el tribunal de instancia quien está en mejor posición de evaluar y aquilatar la prueba presentada.[119] Luego de una evaluación de todo el expediente ante nuestra consideración, la transcripción de la prueba oral, incluyendo, además, la transcripción de la prueba oral no albergamos razón para entender que el tribunal falló al determinar de que la señora Tosado Núñez sufrió afecciones físicas y emocionales a consecuencia del maltrato psicológico infligido por el señor Quiñones Dross.

En mérito de todo los antes expuesto, concluimos que ninguno de los tres (3) errores esgrimidos por el apelante se cometieron, por los que nos es forzoso confirmar el fallo del tribunal de instancia.

IV

Por los fundamentos que anteceden, se *confirma* el dictamen apelado.

---

[116] *Pueblo v. Negrón Ramírez*, supra, a las págs. 907-908.

[117] *Pueblo v. Negrón Ramírez*, supra, a la pág. 908, citando a *Pueblo v. Toro Martínez*, supra, a la pág. 856.

[118] *Pueblo v. Toro Martínez,* supra, a la pág. 858.

[119] *Íd.,* a la pág. 857.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda.  Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones